Filed 10/4/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHEONG YU YEE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DON CHEUNG et al.,<br><br>    Defendants and Respondents. | D060989<br><br><br><br>(Super. Ct. No.<br> 37-2011-00090446-CU-NP-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.

Law Offices of Amelia A. McDermott and Amelia A. McDermott for Plaintiff and Appellant.

J. Kenneth Jensen in pro. per.

Pettit Kohn Ingrassia & Lutz, Douglas A. Pettit and Valerie Garcia Hong for Defendant and Respondent Sally Tsui Wong-Avery.

Phillips Haskett & Ingwalson and Frederick C. Phillips for Defendants and Respondents Yuk Wai Ho, Lin Wah Music Center of San Diego, Zhao Hong Hang, Ng

Man Kiong, Lan H. Hom, Fung Yuet Xiong, Kuen Wan Ghu, Pun Wa, Xiao Xiong Pan, Run You Chen, and Veronica Kwok.

# I.

# INTRODUCTION

This appeal arises out of a malicious prosecution action filed by plaintiff Cheong Yu Yee against defendants J. Kenneth Jensen, Esq.; Sally Tsui Wong-Avery, Esq.; Don Cheung; Lin Wah Music Center of San Diego (Lin Wah); Zhao Hong Hang; Wai Mui Lee; Kai Ai Ng; Tong Yum; Ng Man Kiong; Lan H Hom; Fung Yuet Xiong; Run You Chen; Kuen Wan Ghu; Xiao Xiong Pan; Pun Wa; Veronica Kwok; and Yuk Wai Ho.[1]

The malicious prosecution action arises from the defendants' participation in an underlying action against Yee for claims of fraud and conversion in the matter of *Lin Wah Music Center et al. v. Cheong Y. Yee et al.* (Super. Ct. San Diego County, 2008, No. 37-2008-00080938-CU-FR-CTL) (the *Lin Wah* action). After a trial in the *Lin Wah* action, a jury found in favor of Yee on both of the plaintiffs' claims.

Almost two years after Yee prevailed in the *Lin Wah* action, he filed a malicious prosecution action against Lin Wah, multiple individual members of Lin Wah, and two attorneys whom Yee alleged had represented the plaintiffs in the *Lin Wah* action—Jensen and Wong-Avery. In response to the malicious prosecution action, Lin Wah, the

---

[1] Because the distinction is relevant for purposes of this appeal, we will refer to the defendants other than attorneys Jensen and Wong-Avery as the non-attorney defendants.

individual defendants, and attorney defendant Wong-Avery filed motions to strike under the anti-SLAPP (Strategic Lawsuit Against Public Participation) law. Attorney defendant Jensen filed a demurrer to the complaint on the ground that the action was time-barred as to him, pursuant to the statute of limitations set forth in Code of Civil Procedure[2] section 340.6. The trial court addressed both the demurrer and the motions to strike in a single order, sustaining the demurrer as to attorney defendant Jensen and granting the motion to strike as to all other defendants.

Yee appeals from the trial court's order sustaining the demurrer as to attorney defendant Jensen and granting the remaining defendants' motions to strike under the anti-SLAPP law. Yee contends that the trial court erred in granting the defendants' anti-SLAPP motions because he sufficiently established a probability of succeeding on his malicious prosecution claim against them, despite the fact that the trial court had denied his motion for a nonsuit in the *Lin Wah* action. Yee also challenges the trial court's sustaining of Jensen's demurrer, arguing that the one-year statute of limitations set forth in section 340.6 is applicable to attorney malpractice actions but does not apply to malicious prosecution actions brought against an attorney defendant.

We reject Yee's contentions on appeal and affirm the trial court's rulings.

---

[2] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

3

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *Factual background*

Lin Wah is an organization whose members promote and participate in Chinese opera.  Sometime in 2004, Lin Wah members met with Yee about the possibility of forming a nonprofit musical organization to stage and perform Chinese opera events.  In 2005, Yee and Lin Wah formed the nonprofit organization "Asian Culture & Senior Center, Inc." (ACSC).  A representative of Lin Wah withdrew funds from its bank account and deposited them into an account created for ACSC.  Yee became president of ACSC, and Cheung, one of the members of Lin Wah, became the treasurer of ACSC.

In 2006, a dispute arose concerning the management of the ACSC bank account, to which Cheung had access.  At some point, Yee removed Cheung as a signatory of the ACSC bank account.  Members of Lin Wah were unhappy with Yee's decision and accused Yee of withholding the funds.  The members of Lin Wah voted to disassociate from Yee and ACSC.

Not long after Lin Wah and Yee parted ways, members of Lin Wah approached Wong-Avery for assistance in recovering from Yee money that they believed rightfully belonged to Lin Wah.  Wong-Avery learned that Yee had hired an attorney to represent his interests with respect to the monetary dispute.  Wong-Avery referred Lin Wah members to Attorney Jensen to assist them in the matter.  In November 2007, Jensen sent a letter to Yee on behalf of Lin Wah requesting that he return the disputed funds.

4

Yee apparently did not agree to turn the funds over to Lin Wah. On April 1, 2008, Lin Wah and its members, represented by Jensen, filed a complaint against Yee alleging causes of action for fraud and conversion.[3]

A trial was held in April 2009. Wong-Avery associated in as cocounsel with Jensen on the first day of trial. Over two days, Lin Wah presented its case. At the close of Lin Wah's case, Yee moved for a nonsuit. The trial court ruled, "Well, okay, at this point, the court is supposed to give plaintiff the benefit of the doubt on the evidence. And viewing the evidence in the light most favorable, I think there's enough there to let it go past this point."[4]

On April 29, 2009, the jury returned a verdict in favor of Yee on both causes of action.

B.    *Procedural background*

Yee filed a complaint for malicious prosecution, intentional infliction of emotional distress, and negligent infliction of emotional distress against all of the defendants on April 28, 2011.

Attorney defendant Jensen filed a demurrer to the complaint on July 6, 2011, arguing that the action against him was time barred under the one-year statute of limitations set forth in section 340.6, as applied to malicious prosecution actions against attorneys pursuant to *Vafi v. McCloskey* (2011) 193 Cal.App.4th 874 (*Vafi*).

---

[3]    Wong-Avery was not listed as counsel on the complaint.

[4]    The court's minute order for that day reads: "At this point, the Court finds that there is enough evidence to let the case go forward. The Motion for Nonsuit is denied."

5

On July 8, 2011, attorney defendant Wong-Avery filed a special motion to strike the entire complaint as to her, pursuant to section 425.16, the anti-SLAPP law. Wong-Avery argued that Yee failed to demonstrate a probability of prevailing on the merits of his claim for three reasons: (1) his malicious action against her was barred by the one-year statute of limitations under section 340.6; (2) he could not establish that she lacked probable cause or prosecuted the case with malice at the time she associated in to the *Lin Wah* action; and (3) his claims for intentional and negligent infliction of emotional distress were barred by the litigation privilege under Civil Code section 47, subdivision (b).

Later that month, the non-attorney defendants filed their own special motion to strike the complaint under section 425.16. In their motion, they relied on the second and third grounds that Wong-Avery presented in her special motion to strike.

In the trial court's tentative ruling on Jensen's demurrer and the other defendants' special motions to strike, the court indicated its intention to sustain the demurrer without leave to amend and to grant the special motions to strike. The court held a hearing on the motions on September 23, 2011. At the conclusion of the hearing, the court adopted its tentative ruling as its final ruling.

Yee filed a timely notice of appeal from the trial court's order.[5]

---

5    Jensen has not raised any issue with respect to the fact that Yee's notice of appeal reflects that he is appealing from the order sustaining a demurrer. An order sustaining a demurrer without leave to amend is normally not appealable; rather, an appeal is proper only after entry of a dismissal on such an order. (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1396.) The record on appeal does not reflect the entry of a

6

III.

DISCUSSION

A.      *Defendant Jensen's demurrer to the complaint*

1.      *Legal standards*

We review de novo an order sustaining a demurrer to determine whether the complaint alleges facts sufficient to state a cause of action.  (*CPF Agency Corp. v. Sevel's 24 Hour Towing Service* (2005) 132 Cal.App.4th 1034, 1042.)  We exercise our independent judgment as to whether the complaint states a cause of action.  (*Palestini v. General Dynamics Corp*. (2002) 99 Cal.App.4th 80, 86.)  " 'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.' [Citation.]"  (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153.)

judgment or a dismissal on the demurrer order, despite the fact that Yee contends in his opening brief on appeal that a "judgment of dismissal was filed with this Court which is final to Mr. Yee and Attorney Jensen and disposes of all issues between the parties."

However, "when the trial court has sustained a demurrer to all of the complaint's causes of action, appellate courts may deem the order to incorporate a judgment of dismissal, since all that is left to make the order appealable is the formality of the entry of a dismissal order or judgment.  [Citations.]"  (*Sisemore v. Master Financial, Inc., supra,* 151 Cal.App.4th at p. 1396.)  Here, the order sustaining the demurrer to the complaint without leave to amend as to attorney defendant Jensen effectively ended Yee's ability to proceed further with his case against Jensen, and the only step left to make the order appealable is the formal entry of a dismissal order or judgment.  We therefore deem the order on Jensen's demurrer to incorporate a judgment of dismissal and will review the order in this appeal, in the interest of judicial economy and the interest of justice.  (See *ibid*.)

7

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

2.     *Analysis*

Yee's complaint alleging malicious prosecution against Jensen and the other defendants was filed on April 28, 2011, which was one year and 364 days after the jury returned a verdict in his favor in the *Lin Wah* action.[6] A "cause of action for malicious prosecution first accrues at the conclusion of the litigation in favor of the party allegedly prosecuted maliciously. [Citation.]" (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 846.)

The issue in dispute is whether the one-year statute of limitations set forth in section 340.6, subdivision (a)[7] applies to a malicious prosecution action against an

---

[6]     Yee's complaint contained causes of action for intentional infliction of emotional distress and negligent infliction of emotional distress, in addition to the malicious prosecution action. However, on appeal, Yee addresses *only* the malicious prosecution cause of action. We conclude that Yee has thus forfeited any argument with respect to the trial court's sustaining the demurrer with respect to Yee's other causes of action.

[7]     Section 340.6, subdivision (a) provides in relevant part: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first."

8

attorney, or instead, whether the general two-year statute of limitations set forth in section 335.1, which typically applies to claims for malicious prosecution, applies even where the malicious prosecution defendant is an attorney.[8]

One other appellate court has concluded that "the one-year limitations period under section 340.6 applies to an action for malicious prosecution against an attorney rather than the two-year limitations period which applies to malicious prosecution actions generally." (*Vafi, supra,* 193 Cal.App.4th at p. 880.) Jensen contends that the *Vafi* decision is binding on this court. Although the *Vafi* decision is useful in analyzing the question presented in this appeal, we disagree with Jensen's contention that we are constrained to follow *Vafi* as "binding authority." (See, e.g., *Henry v. Associated Indem. Corp.* (1990) 217 Cal.App.3d 1405, 1460 [decisions of one appellate court have no stare decisis effect, and are not binding upon other appellate courts].) Nevertheless, after considering the question independently and reviewing the pertinent statutory language, we agree with the *Vafi* court and adopt its conclusion that the one-year statute of limitations set forth in section 340.6, subdivision (a) applies to a claim for malicious prosecution brought against an attorney that is based on that attorney's participation in the litigation that forms the basis of the malicious prosecution claim.

As with all questions of statutory interpretation, we begin with the words of the statute. " ' "[W]e must look first to the words of the statute 'because they generally

---

[8]     Section 335.1, which applies to claims for "injury to . . . an individual caused by the wrongful act or neglect of another," has been held to govern claims for malicious prosecution, generally. (*Stavropoulos v. Superior Court* (2006) 141 Cal.App.4th 190, 197 (*Stavropoulos*).)

provide the most reliable indicator of legislative intent.' [Citation.] If the statutory language is clear and unambiguous, our inquiry ends. 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citations.] In reading statutes, we are mindful that words are to be given their plain and commonsense meaning. [Citation.]' [Citation.] Thus, we ' "avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend." [Citations.]' [Citations.]" (*Vafi*, *supra*, 193 Cal.App.4th at p. 880.)

Other principles of statutory interpretation are also helpful: " '[T]he intention of the Legislature . . . is to be pursued, if possible; and when a general and [a] particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it. ' " (*Vafi*, *supra*, 193 Cal.App.4th at p. 880, quoting § 1859.) "Thus, a specific statute of limitations takes precedence over a general one, even though the latter ' "would be broad enough to include the subject to which the more particular provision relates." [Citation.]' [Citations.]" (*Vafi*, *supra*, at p. 880.)

When determining which statute of limitations applies to a particular action, a court considers what the principal purpose or "gravamen" of the action is, rather than the form of action or the relief demanded. (*Vafi*, *supra*, 193 Cal.App.4th at p. 880.)

The plain language of section 340.6 applies to *all* actions, with the exception of those actions asserting actual fraud, that are brought against an attorney for that attorney's "wrongful act or omission . . . arising in the performance of professional services." (§ 340.6.) The phrase "wrongful act or omission" is "used interchangeably as a reference

10

to both tortious and contractual wrongdoing." (*Southland Mechanical Constructors Corp. v. Nixen* (1981) 119 Cal.App.3d 417, 431 (*Southland*) [concluding language of § 340.6 applies to breaches of contract in addition to torts].) The words of the statute are quite broad, but they are not ambiguous: any time a plaintiff brings an action against an attorney and alleges that attorney engaged in a wrongful act or omission, other than fraud, in the attorney's performance of his or her legal services, that action must be commenced within a year after the plaintiff discovers, or should have discovered, the facts that comprise the wrongful act or omission.

Yee's complaint alleges that Jensen acted wrongfully in "pursu[ing] a meritless lawsuit against [Yee] for fraud and conversion" and in "fil[ing] and continu[ing] litigation of the Underlying Action on behalf of [the non-attorney defendants] despite the fact no reasonable attorney would have done so." Thus, the gravamen of Yee's complaint against Jensen is the allegation that Jensen engaged in wrongful acts in his performance of professional legal services in his representation of the non-attorney defendants. This claim clearly falls within the plain language of the statute. (See *Vafi*, *supra*, 193 Cal.App.4th at p. 880.) Yee's claim against Jensen also falls within the plain language of the alternative statute of limitations set forth in section 335.1 that has been held generally applicable to malicious prosecution actions (see *Stavropoulos, supra,* 141 Cal.App.4th at p. 197).

As noted, where more than one statute might apply to a particular claim, " 'a specific limitations provision prevails over a more general provision.' [Citation.]" (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1316-1317.) Given

11

that section 340.6 is a more specific statute of limitations, applicable only to actions against attorneys for their wrongful acts or omissions, its provisions prevail over the more general "catchall" statute of limitations for claims against any defendant based on his or her alleged "wrongful act or neglect" of another.

We are not persuaded by Yee's argument that the language of section 340.6 "contemplates situations where the wrongful act is related to the duties of an attorney to the *client*." (Italics added.) We are bound by the plain language of the statute, which clearly applies when "the plaintiff" discovers the wrongful act on the part of the attorney. There is no requirement in the statute that the plaintiff have been a client of the attorney. (§ 340.6.) Rather, the Legislature chose to use the term "plaintiff" and not "client," in framing the entire provision. Although one of the tolling provisions included in the statute provides for tolling in a situation in which an attorney continues to represent "the plaintiff," the other tolling provisions do not indicate that they are limited to situations involving actions by a client against his or her attorney, as opposed to claims by a third party against an attorney.

Yee contends that "[a]ll of the published cases on [s]ection 340.6 except the *Vafi* case involve clients and former clients, with the exception of situations where the beneficiary of a will sued the attorney preparing a will." However, this fact does not assist us in interpreting the statutory language. The lack of cases addressing the question currently before us does not constitute evidence that section 340.6 applies only to actions brought by a client against a former attorney. Rather, it is, at most, evidence that no court

12

other than the *Vafi* court has considered whether section 340.6 is limited to actions arising out of an attorney-client relationship.

Yee's contention that the phrase "a wrongful act or omission" in section 340.6 refers only to "malpractice" and is undermined by the fact that the term "malpractice" does not appear anywhere in the statute. If the Legislature had wanted to limit section 340.6 to malpractice actions between clients and attorneys, it could have done so by making it clear that the actions to which it applies are limited to those brought by a client or former client against his or her attorney for malpractice. The Legislature did not do this, and instead, enacted a *broadly* worded statute that limits the time within which any plaintiff may bring an action against an attorney for the attorney's conduct "arising in the performance of professional services." (*Ibid*.)

Unless giving the words of a statute their plain and commonsense meaning would produce " 'absurd consequences,' " we adhere to the plain meaning. (*Vafi*, *supra*, 193 Cal.App.4th at p. 880.) Although in enacting section 340.6, the Legislature may have intended the statute to apply to malpractice actions against an attorney by a client, the language of the statutory provision is not limited to that situation, and we cannot say that interpreting the one-year limitation set forth in section 340.6 to apply to a malicious prosecution action initiated by a third party against an attorney would produce *absurd* consequences. First, we note that "malicious prosecution has traditionally been regarded as a disfavored cause of action because 'the tort has the potential to impose an undue "chilling effect" on the ordinary citizen's willingness to report criminal conduct or to bring a civil dispute to court.' [Citation.] As a result, 'the elements of the tort have

13

historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim.' [Citation.]" (*Stavropoulos*, *supra*, 141 Cal.App.4th at p. 197.) Arguably, this disfavor for malicious prosecution actions could apply even more so to malicious prosecution claims against an attorney, who, by nature of his or her profession, is more likely to be involved in litigation than the average plaintiff, and thus, may be more likely to be subjected to malicious prosecution claims.

Second, interpreting section 340.6 as imposing a one-year statute of limitations for malicious prosecution actions against attorneys supports the Legislature's purpose in enacting the provision. As Yee acknowledges, the "words of a statute must be given such interpretation as will promote rather than defeat the general purpose and policy of the law." (*Southland*, *supra*, 119 Cal.App.3d at p. 430.) One of the purposes that the Legislature had in enacting section 340.6, as evidenced by the legislative history of the provision, was to attempt to reduce the costs of legal malpractice insurance. (See Sen. Com. on Judiciary, Report, Assem. Bill No. 298, 1977-1978, p. 1.) California courts have acknowledged that *malicious prosecution* actions have an impact on attorney malpractice insurance premiums and raise the costs of practicing law. (See *Bidna v. Rosen* (1993) 19 Cal.App.4th 27, 35-36 [disallowing malicious prosecution action in family law cases, in part because of impact of malicious prosecutions on malpractice insurance premiums]; see also *Lossing v. Superior Court* (1989) 207 Cal.App.3d 635, 641, fn. 5 [noting that allowing malicious prosecution actions filed by one attorney

14

against another is the type of litigation that "is a substantial reason for skyrocketing premiums for legal malpractice insurance"].)

Although we recognize that the effect of applying the one-year statute of limitations in section 340.6 to a malicious prosecution action brought against an attorney is that the limitations period applicable to an attorney defendant in a malicious prosecution action will be different from the limitations period applicable to other non-attorney defendants in the same action, we cannot conclude that such a result is absurd. As we have explained, the Legislature may have valid policy reasons for providing a more circumscribed limitations period to attorney defendants than to other defendants of malicious prosecution actions.

Because it is undisputed that the conduct at issue arose from Jensen's performance of his professional services to the plaintiffs in the *Lin Wah* action, and because the plain meaning of the words of the statute applies to the malicious prosecution claim against Jensen and such application is not absurd, we conclude that the one-year limitations period in section 340.6 governs Yee's malicious prosecution claim against Jensen. Since this action was filed almost two years after Yee prevailed in the *Lin Wah* action, it is time-barred as to Attorney Jensen.[9]

---

[9] At oral argument in this case, citing *Silas v. Arden* (2012) 213 Cal.App.4th 75, Yee raised for the first time a contention that this court should not apply the one-year statute of limitations in section 340.6 on the ground that to apply our interpretation of the statute "retroactively" to Yee's action would be unfair to Yee because the parties had relied on a different, settled rule of law. (See *Silas*, *supra*, at p. 89 [declining to apply one-year statute of limitations in section 340.6 because of belief that prevailing view prior to *Vafi* opinion was that two-year statute of limitations applied to malicious

B.    *Defendant Wong-Avery's anti-SLAPP motion*[10]

Yee's complaint suffers the same defect with respect to attorney defendant Wong-Avery as it does with respect to attorney defendant Jensen—i.e., it is untimely under section 340.6, subdivision (a) since it was brought more than a year after Yee discovered his cause of action for malicious prosecution.  As a result, Yee cannot prevail on his malicious prosecution claim against Wong-Avery.  We therefore affirm the trial court's granting of attorney defendant Wong-Avery's anti-SLAPP motion.

---

prosecution actions, whether against an attorney or non-attorney].)  Because Yee could have presented this argument in his briefing on appeal but did not do so, we consider the issue forfeited.  In any event, we question the holding in *Silas* since, as stated in the text of this opinion, the language of section 340.6 is clear and unambiguous.  Contrary to the *Silas* court's suggestion that *Vafi* effected a change in "settled law," no court had previously held that the two-year statute of limitations in section 335.1 applied to malicious prosecution actions *against attorneys.*  The *Silas* court relied on *Stavropoulos*, *supra*, 141 Cal.App.4th 190 in stating that "the prevailing view . . . was [that] the two-year statute of limitations of section 335.1 applied to malicious prosecution actions."  However, the defendant in *Stavropoulos* was not an attorney.  *Stavropoulos* thus does not address which statute of limitations applies to malicious prosecution actions against attorneys.

[10]    Although the trial court's order granting Wong-Avery's special motion to strike and the non-attorney defendants' special motion to strike resulted in the striking of *all three* of the causes of action that Yee alleged in his complaint—i.e., malicious prosecution, intentional infliction of emotional distress, and negligent infliction of emotional distress—on appeal Yee addresses only the malicious prosecution cause of action.  As a result, we conclude that Yee has forfeited any argument with respect to the trial court's ruling striking his causes of action for intentional infliction of emotional distress and negligent infliction of emotional distress, and we affirm the court's order with respect to those causes of action based on this forfeiture.

C.    *The non-attorney defendants' anti-SLAPP motion*

   1.    *Applicable Legal standards*

"Whether section 425.16 applies, and whether the plaintiff has shown a probability of prevailing, are both questions we review independently on appeal." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906; see also *HMS Capital, Inc. v. Lawyers Title Co*. (2004) 118 Cal.App.4th 204, 212 (*HMS Capital*) [orders granting anti-SLAPP motions are reviewed de novo].)

Section 425.16 provides in pertinent part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

Resolution of a special motion to strike "requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 67.)

17

For purposes of an anti-SLAPP motion, "[t]he court considers the pleadings and evidence submitted by both sides, but does not weigh credibility or compare the weight of the evidence.  Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff . . . ."  (*HMS Capital*, *supra*, 118 Cal.App.4th. at p. 212.)  A plaintiff "need only establish that his or her claim has 'minimal merit' [citation] to avoid being stricken as a SLAPP.  [Citation.]"  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*).)

To establish a claim for malicious prosecution, a plaintiff is required to show that a prior claim initiated by the defendant was (1) pursued to a legal termination favorable to the plaintiff, (2) brought without probable cause, and (3) initiated with malice.  (*Villa v. Cole* (1992) 4 Cal.App.4th 1327, 1335.)

2.    *Analysis*

Yee does not challenge the trial court's conclusion that his malicious prosecution claim falls within the purview of the anti-SLAPP statute.  (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735 (*Jarrow*) [a malicious prosecution action alleges that the defendant committed a tort by filing a lawsuit, and therefore, courts routinely conclude that malicious prosecution causes of action fall within the purview of the anti-SLAPP statute].)  Accordingly, we address whether Yee presented evidence sufficient to "[establish] that there is a probability that [he] will prevail on the claim."  (§ 425.16, subd. (b)(1).)

18

Trial in the *Lin Wah* action resulted in a legal termination favorable to Yee. We therefore consider whether Yee has shown that the non-attorney defendants filed and prosecuted the complaint against him without probable cause.

A party has probable cause to bring the underlying suit if, objectively viewed, its claims were legally tenable, meaning a reasonable attorney would conclude that the underlying action was not totally and completely without merit. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 885 (*Sheldon Appel*).) Whether there was probable cause to initiate or continue to prosecute an action in light of the facts known to the malicious prosecution defendant is a legal question for the court to decide. (*Id.* at p. 875.) "In analyzing the issue of probable cause in a malicious prosecution context, the trial court must consider both the factual circumstances established by the evidence and the legal theory upon which relief is sought. A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 164-165 (*Sangster*).)

In determining whether the prior action was legally tenable, i.e., whether the action was supported by probable cause, the court is to construe the allegations of the underlying complaint liberally, in a light most favorable to the malicious prosecution defendant. (*Sangster*, *supra*, 68 Cal.App.4th at p. 165.) Further, we keep in mind that "every case litigated to a conclusion has a losing party, but that does not mean the losing position was not arguably meritorious when it was pled. [Citation.] And just as an action that ultimately proves nonmeritorious may have been brought with probable cause,

19

successfully defending a lawsuit does not establish that the suit was brought without probable cause. [Citations.]" (*Jarrow*, *supra*, 31 Cal.4th at p. 743.)

We conclude that Yee has failed to show a probability of prevailing on the lack of probable cause element of his malicious prosecution claim.

Certain non-final rulings on the merits may serve as the basis for concluding that there was probable cause for prosecuting the underlying case on which a subsequent malicious prosecution action is based. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 817–818.) This is based on the notion that "[c]laims that have succeeded at a hearing on the merits, even if that result is subsequently reversed by the trial or appellate court, are not so lacking in potential merit that a reasonable attorney or litigant would necessarily have recognized their frivolousness." (*Id.* at p. 818.) Thus, for instance, the denial of a nonsuit motion and a subsequent plaintiff's jury verdict has been found sufficient to constitute probable cause, even though the trial court or appellate court later reverses that verdict. (*Cowles v. Carter* (1981) 115 Cal.App.3d 350, 356; see also *Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1052–1053 [designer's success before Board of Patent Appeals established probable cause, notwithstanding the fact that designer's victory was reversed by appellate court].) Similarly, the denial of a defense summary judgment motion "normally establishes there was probable cause to sue, thus barring a later malicious prosecution suit." (*Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375, 384 (*Roberts*); see also *Zamos v. Stroud* (2004) 32 Cal.4th 958, 973, fn. 10 [The denial of summary judgment normally precludes the trial court from finding that the lawsuit was frivolous for purposes of a malicious prosecution claim].) "We say

20

'normally' rather than 'conclusively' because there may be situations where denial of summary judgment should not irrefutably establish probable cause. For example, if denial of summary judgment was induced by materially false facts submitted in opposition, equating denial with probable cause might be wrong. Summary judgment might have been granted but for the false evidence." (*Roberts*, *supra*, at p. 384.)

The trial court in the *Lin Wah* action denied Yee's motion for nonsuit at the close of the plaintiffs' case, expressly concluding that the plaintiffs had presented sufficient evidence to allow their claims to go to the jury.[11] We conclude that in this case, the trial court's determination on the motion for nonsuit that there was sufficient evidence to allow the jury to decide the questions presented by the case means that a reasonable attorney could have concluded that the *Lin Wah* action "was not totally and completely without merit." (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 885.) Indeed, there was evidence that there was a valid question as to who was the rightful owner of the funds that had been withdrawn from the Lin Wah account and transferred into the account for the newly formed ACSC. The fact that the jury ultimately sided with Yee does not mean that the action against him lacked probable cause.

In an attempt to overcome the fact that the trial court concluded that there was sufficient evidence to allow the jury to resolve the *Lin Wah* action, Yee contends that the fraud exception to the "interim judgment rule" applies, such that the trial court's ruling on

---

[11]    Again, the court's minute order for that day reads: "At this point, the Court finds that there is enough evidence to let the case go forward. The Motion for Nonsuit is denied."

the nonsuit motion in the *Lin Wah* action was procured as a result of "perjured testimony and false evidence." However, Yee has failed to establish that the court's ruling on his nonsuit motion in the underlying action was obtained by fraud, perjury, or any other unfair conduct. Yee points to testimony by Cheung in the *Lin Wah* action, both at his deposition and at trial, to suggest that Cheung presented false testimony on which the court relied. For example, Yee contends that at various times, Cheung admitted that he invited members of the media to a press conference and spoke at the press conference, but at other times stated that he "never spoke with any member of the media" and "never held a press conference and made these statements to the media."

A review of Cheung's testimony at trial in the *Lin Wah* action, which included questions pertaining to his deposition testimony, demonstrates that Cheung, who utilized an interpreter during his testimony, was confused with respect to questions about whether he had spoken with members of the media. Specifically, Cheung readily admitted that he "sponsored" a press conference sometime in November 2006 concerning the dispute between Lin Wah and Yee, and that he spoke with the reporters who were present at that press conference. He was then asked whether he remembered his prior deposition testimony, in which he had said that he had "never spoken to any member of the media regarding this matter." Cheung's response to this question is telling, in that he said that he had invited "the press, the reporters" but that he "was not speaking to anyone privately." At trial, when pressed again with respect to his deposition response to a question about whether he had ever " 'given an interview to any member of the media concerning Mr. Yee,' " which was that he had not "spoken to anyone," Cheung agreed

22

with his deposition testimony, and reaffirmed that he "personally did not speak to any person of the media because [he] did not know any of them."  When asked about what seemed to be conflicting testimony about holding a press conference, and why he had not stated during his deposition that he had held the press conference, Cheung said, "Nobody asked me that question at the deposition."

It is clear from this portion of the transcript that rather than constituting evidence of fraudulent testimony, Cheung misunderstood the questions concerning his having "spoken" to members of the press as referring to instances in which he had spoken *privately* with members of the press, separate from the press conference that he readily admitted he had "sponsored."  We therefore reject Yee's contention that "[b]ut for this sort of testimony, the lower court would have granted Mr. Yee's non-suit motion."

Because the record demonstrates that the defendants in the malicious prosecution case had probable cause to bring the underlying action, Yee cannot establish a probability that he will prevail on his malicious prosecution claim.

IV.

DISPOSITION

We deem the order sustaining Jensen's demurrer to the complaint without leave to amend to have incorporated a judgment of dismissal as to Jensen, and we affirm that judgment. We also affirm the trial court's order granting the remaining defendants' special motions to strike. Costs are awarded to Respondents.

AARON, J.

WE CONCUR:

BENKE, Acting P. J.

O'ROURKE, J.