Filed 3/28/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JOSEPH CONNELLY,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>DANIEL BORNSTEIN, et al.,<br><br>        Defendants and Respondents. | A152375<br><br>(San Francisco County<br>Super. Ct. No. CGC-14-541666) |

Code of Civil Procedure section 340.6, subdivision (a) (hereafter, section 340.6(a)),[1] imposes a one-year statute of limitations for "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services." Courts of Appeal have divided over whether this provision governs malicious prosecution claims against attorneys. We conclude that it does.

BACKGROUND[2]

In July 2012, Elizabeth Maguire brought an unlawful detainer action against appellant Joseph Connelly. Maguire was represented by attorney Daniel Bornstein, a partner at the law firm Bornstein & Bornstein (collectively, Bornstein). On September 18, 2012, Maguire voluntarily dismissed the unlawful detainer action.

_____

[1] All undesignated section references are to the Code of Civil Procedure.

[2] "Since this is an appeal from judgment issued following the grant of a motion for judgment on the pleadings, we accept, for purposes of this appeal only, that all properly pleaded material facts alleged in the complaint are true." (*Kempton v. City of Los Angeles* (2008) 165 Cal.App.4th 1344, 1347.)

1

On September 16, 2014, appellant sued Maguire and Bornstein for malicious prosecution. The complaint alleged Maguire and Bornstein "actively were involved in brin[g]ing and maintaining" the unlawful detainer action, which ended in appellant's favor; "no reasonable person in [Maguire and Bornstein's] circumstances would have believed that there were reasonable grounds" to bring and/or maintain the action; and Maguire and Bornstein "acted primarily for a purpose other than succeeding on the merits" of the action. Bornstein filed a motion for judgment on the pleadings, arguing the one-year statute of limitations in section 340.6(a) barred appellant's claim against Bornstein.[3] The trial court agreed, granted the motion, and entered judgment for Bornstein.

DISCUSSION

Appellant contends section 335.1 sets out the statute of limitations for malicious prosecution actions against attorneys. Bornstein argues that section 340.6(a) applies instead. "Which statute of limitations governs in this situation is a legal issue subject to our de novo review." (*Vafi v. McCloskey* (2011) 193 Cal.App.4th 874, 880 (*Vafi*).)

---

[3] Section 340.6(a) provides, in its entirety: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. If the plaintiff is required to establish his or her factual innocence for an underlying criminal charge as an element of his or her claim, the action shall be commenced within two years after the plaintiff achieves postconviction exoneration in the form of a final judicial disposition of the criminal case. Except for a claim for which the plaintiff is required to establish his or her factual innocence, in no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury. [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred. [¶] (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation. [¶] (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action."

I.  *Legal Background*

A.  *Court of Appeal Cases*

"California has never prescribed by statute a specific period of limitation for malicious prosecution."  (*Stavropoulos v. Superior Court* (2006) 141 Cal.App.4th 190, 193 (*Stavropoulos*).)  Instead, courts have long held the tort was encompassed by statutes governing claims for " 'injury to' " a person " 'caused by the wrongful act or neglect of another.' "  (*Id.* at pp. 194–195 & n.3, 197.)  Currently, this statute is section 335.1, which provides a two-year limitations period.  (*Stavropoulos,* at p. 197.)

In 2011, *Vafi, supra,* 193 Cal.App.4th 874 held, as a matter of first impression, that malicious prosecution actions *against attorneys* were instead governed by section 340.6(a), which sets forth a one-year limitations period for "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services . . . ."  *Vafi* reasoned that malicious prosecution claims fell within the plain language of the statute, and "the more specific statute of limitations under section 340.6 overrides the general catch-all statute provided by section 335.1."  (*Vafi,* at p. 881.)  The court rejected, as contrary to the statutory language, the plaintiff's "argument that section 340.6 is limited to situations where a client has sued his attorney for malpractice."  (*Vafi,* at p. 882.)  The court concluded by noting "malicious prosecution has traditionally been regarded as a disfavored cause of action," and "[t]his disfavor would seem to apply at least equally, if not more so, to malicious prosecution claims against an attorney . . . ."  (*Id.* at p. 883.)

*Vafi* was followed by *Yee v. Cheung* (2013) 220 Cal.App.4th 184 (*Yee*).  *Yee* agreed with *Vafi's* conclusion, noting that, in the case before it, "the gravamen" of the plaintiff's malicious prosecution claim against the attorney defendant "is the allegation that [the attorney] engaged in wrongful acts in his performance of professional legal services in his representation of the nonattorney defendants.  This claim clearly falls within the plain language of the statute."  (*Id.* at p. 195.)  Like *Vafi, Yee* concluded the more specific provision of section 340.6(a) prevails over the more general one of section 335.1, and rejected the argument that section 340.6(a) applies only to malpractice claims.

(*Yee,* at pp. 195–196.)  *Yee* further concluded that its interpretation of section 340.6(a) "supports the Legislature's purpose in enacting the provision," which included the "attempt to reduce the costs of legal malpractice insurance," because "malicious prosecution actions have an impact on attorney malpractice insurance premiums and raise the costs of practicing law." (*Yee,* at pp. 196–197.)

*Roger Cleveland Golf Co., Inc. v. Krane & Smith, APC* (2014) 225 Cal.App.4th 660 (*Roger Cleveland*) disagreed with *Vafi* and *Yee. Roger Cleveland* involved an issue not present in the prior cases: "the tolling of the statute of limitations during the pendency of an appeal" in the underlying action. (*Roger Cleveland,* at p. 676.) *Roger Cleveland* discussed the judicially-created rule that "the statute of limitations on a malicious prosecution cause of action commences to run upon entry of judgment in the prior action and continues to run to the date of filing the notice of appeal. [Citation.] The filing of an appeal renders the malicious prosecution action premature. The statute of limitations is tolled and recommences to run when the appellate process has been exhausted." (*Id.* at p. 674.) *Roger Cleveland* noted that the Supreme Court, construing section 340.6(a) in a malpractice case, had "rejected the contention that 'accrual should be tolled' until resolution of the appeal . . . ." (*Roger Cleveland,* at p. 675 [discussing *Laird v. Blacker* (1992) 2 Cal.4th 606].) *Roger Cleveland* reasoned that, in malicious prosecution cases, "[a]pplying section 340.6, subdivision (a) to attorneys without such an accrual rule during the pendency of an appeal leads to absurd results, permitting the losing party in the prior action to file a notice of appeal to run out the statute of limitations, or requiring a malicious prosecution plaintiff to bring a premature action during the pendency of the appeal. We must construe section 340.6, subdivision (a) to avoid such unreasonable results." (*Id.* at p. 677.) *Roger Cleveland* also disagreed with *Vafi* and *Yee's* interpretation of the statutory language and legislative history, which indicated, according to *Roger Cleveland,* that section 340.6(a) was a "specially tailored statute of limitations for legal malpractice actions . . . ." (*Roger Cleveland,* at p. 682.)

4

B.  Lee v. Hanley

In 2015—after the *Vafi, Yee,* and *Roger Cleveland* decisions—the Supreme Court issued an opinion discussing the scope of section 340.6(a) as applied to a claim seeking the return of advanced but unearned attorney fees.  (*Lee v. Hanley* (2015) 61 Cal.4th 1225 (*Lee*).)  *Lee* focused on the statutory phrase " 'arising in the performance of professional services,' " and concluded the language was ambiguous as to whether it "limits the scope of section 340.6(a) to legal malpractice claims or covers a broader range of wrongful acts or omissions that might arise during the attorney-client relationship." (*Id.* at p. 1233.)  To resolve the ambiguity, *Lee* turned to the legislative history, noting the statute was enacted "in 1977 amid rising legal malpractice insurance premiums." (*Ibid.*)  One cause of the rise in premiums was "uncertainty surrounding the limitations period for claims of legal malpractice," including that "[l]awsuits for malpractice were subject to different limitations periods depending on whether the plaintiff pleaded breach of a written contract (Code Civ. Proc., § 337 [four years]), fraud (*id.*, § 338 [three years]), or breach of an oral contract or a tort affecting intangible property (*id.*, § 339, subd. (1) [two years])." (*Id.* at pp. 1233–1234.)  A primary purpose of the bill was to " 'reduce[] the cost of legal malpractice insurance' . . . ." (*Id.* at p. 1234.)

However, *Lee* noted, while the original proposed bill applied to " 'any action for damages against an attorney based upon the attorney's alleged professional negligence,' " subsequent amendments replaced this language with that of the enacted statute, " '[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services . . . .' " (*Lee, supra,* 61 Cal.4th at p. 1234.)  *Lee* explained, "the amended language can be traced to a proposal in a State Bar Journal article" advocating "a single statute of limitations applicable to legal malpractice claims.  The author suggested using the phrase '[a]n action against an attorney for a wrongful act or omission' rather than 'malpractice' because ' "malpractice" is not in itself a word of precise definition.  Legal malpractice is best stated in terms of the actual wrong: a wrongful act or omission occurring in the rendition of professional services.' " (*Id.* at pp. 1234–1235.)  As a result of this amendment, *Lee* reasoned, "the

5

statute applies not only to actions for professional negligence but to any action alleging wrongful conduct, other than actual fraud, arising in the performance of professional services.  At the same time, the Legislature continued to make clear that its primary purpose was to address the growing cost of malpractice lawsuits. . . . Thus, while section 340.6(a) applies to claims other than strictly professional negligence claims, it does not apply to claims that do not depend on proof that the attorney violated a *professional* obligation."  (*Id.* at p. 1236.)  *Lee* continued: "section 340.6(a)'s time bar applies to claims whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services.  In this context, a 'professional obligation' is an obligation that an attorney has by virtue of being an attorney, such as fiduciary obligations, the obligation to perform competently, the obligation to perform the services contemplated in a legal services contract into which an attorney has entered, and the obligations embodied in the Rules of Professional Conduct." (*Id.* at pp. 1236–1237.)

Lee rejected an argument that the statute should be construed "to apply to all forms of attorney misconduct, except actual fraud, that occur during the attorney-client relationship or entail the violation of a professional obligation."  (*Lee, supra,* 61 Cal.4th at p. 1238.)  *Lee* reasoned: "Misconduct does not 'aris[e] in' the performance of professional services for purposes of section 340.6(a) merely because it occurs during the period of legal representation or because the representation brought the parties together and thus provided the attorney the opportunity to engage in the misconduct.  To hold otherwise would imply that section 340.6(a) bars claims unrelated to the Legislature's purposes in enacting section 340.6(a)—for example, claims that an attorney stole from or sexually battered his client while the attorney was providing legal advice.  Nor does section 340.6(a) necessarily apply whenever a plaintiff's allegations, if true, would entail a violation of an attorney's professional obligations.  The obligations that an attorney has by virtue of being an attorney are varied and often overlap with obligations that all persons subject to California's laws have.  For example, everyone has an obligation not to sexually batter others (see Civ. Code § 1708.5, subd. (a)), but attorneys also have a

6

professional obligation not to do so in the particular context of the attorney-client relationship (see Cal. Rules of Prof. Conduct, rule 3–120). For purposes of section 340.6(a), the question is not simply whether a claim alleges misconduct that entails the violation of a professional obligation. Rather, the question is whether the claim, in order to succeed, necessarily depends on proof that an attorney violated a professional obligation as opposed to some generally applicable nonprofessional obligation." (*Ibid.*)

*Lee* then applied this construction to the case before it. The plaintiff, Nancy Lee, retained the defendant, attorney William Hanley, to represent her in civil litigation, and advanced him funds to be used for attorney fees. (*Lee, supra,* 61 Cal.4th at p. 1230.) After the matter settled, Hanley indicated that the advanced funds exceeded the legal services rendered, but did not return the unearned fees despite Lee's demand. (*Ibid.*) Reviewing the trial court's order sustaining Hanley's demurrer, *Lee* reasoned: "Lee's complaint may be construed to allege that Hanley is liable for conversion for simply refusing to return an identifiable sum of Lee's money. Thus, at least one of Lee's claims does not necessarily depend on proof that Hanley violated a professional obligation in the course of providing professional services. Of course, Lee's allegations, if true, may also establish that Hanley has violated certain professional obligations, such as the duty to refund unearned fees at the termination of the representation (Cal. Rules of Prof. Conduct, rule 3-700(D)(2)), just as an allegation of garden-variety theft, if true, may also establish a violation of an attorney's duty to act with loyalty and good faith toward a client. But because Lee's claim of conversion does not necessarily depend on proof that Hanley violated a professional obligation, her suit is not barred by section 340.6(a)." (*Id.* at p. 1240.)

*Lee* did not expressly consider the application of the statute to malicious prosecution claims against attorneys. It disapproved *Roger Cleveland* "to the extent [it is] inconsistent with this opinion," but in so doing *Lee* highlighted *Roger Cleveland's* characterization of section 340.6(a) " 'as a professional negligence statute.' " (*Lee, supra,* 61 Cal.4th at p. 1239.) *Lee* did cite *Vafi* and *Yee's* holdings that section 340.6(a) applies to malicious prosecution claims, as part of a string citation following a statement

7

that one purpose of the statute was to ensure that "the applicable limitations period for [malpractice] claims would turn on the conduct alleged and ultimately proven, not on the way the complaint was styled." (*Lee,* at p. 1236.) Although the citation arguably could be construed as an implicit approval of those cases (and Bornstein so contends), the Supreme Court made clear in a subsequent opinion that *Lee* did not resolve the issue: "*Lee* criticized *Roger Cleveland*'s premise that section 340.6(a) should be understood ' "as a professional negligence statute" ' [citation]—without analyzing *Roger Cleveland*'s ultimate conclusion that section 340.6(a) is inapplicable to claims filed against a former litigation adversary's attorney." (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775 (*Parrish*).) *Parrish,* which involved a malicious prosecution claim against an attorney, decided the case before it on a different ground and thus "d[id] not reach the limitations issue." (*Ibid.*)

II. *Section 340.6(a) Applies to Malicious Prosecution Claims Against Attorneys*

We now turn to whether section 340.6(a), as construed by the Supreme Court in *Lee,* applies to malicious prosecution claims against attorney defendants.[4] Malicious prosecution "consists of three elements. The underlying action must have been: (i) initiated or maintained by, or at the direction of, the defendant, and pursued to a legal termination in favor of the malicious prosecution plaintiff; (ii) initiated or maintained without probable cause; and (iii) initiated or maintained with malice." (*Parrish, supra,* 3 Cal.5th at p. 775.)

*Lee* held section 340.6(a) "applies to claims whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services," defining "professional obligation" as "an obligation that an attorney has by virtue of being an attorney . . . ." (*Lee, supra,* 61 Cal.4th at pp. 1236–1237.) We begin with the proposition, never questioned in *Lee,* that legal malpractice

---

[4] Of course, attorneys can also be litigants. We see no basis to apply section 340.6(a) to a malicious prosecution claim against a litigant in the prior action who also happened to be an attorney. We therefore limit our discussion to malicious prosecution claims against attorneys who acted as attorneys, not litigants, in the underlying lawsuit.

8

claims fall within this definition. Indeed, *Lee* rejected the proposition that the statute was "limit[ed] . . . to legal malpractice claims" and concluded "the Legislature's intent [was] that section 340.6(a) cover *more* than claims for legal malpractice . . . ." (*Id.* at pp. 1233, 1237, italics added.)

As we will explain, malicious prosecution, in certain pertinent respects, closely resembles legal malpractice. Legal malpractice is not a clearly defined term; the Legislature's choice of language for section 340.6(a) was in large part because of a commentator's statement that " ' "malpractice" is not in itself a word of precise definition.' " (*Lee,* at p. 1235.) Our Supreme Court has provided one definition: "Legal malpractice consists of the failure of an attorney 'to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.' " (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 180.) To be sure, legal malpractice is generally thought of as a claim by a client or former client, which is not the case for malicious prosecution. (See 1 Mallen, Legal Malpractice (2019 ed.) § 1:4 [author's proposed definition of legal malpractice excludes claims of nonclients because "[t]hese claims do not concern a deficiency in the quality of the attorney's services rendered to the client, but an injury allegedly caused to a third party because of the attorney's representation" (fn. omitted)].)[5] Nonetheless, an attorney who engages in malicious prosecution violates the obligation, embodied in the Rules of Professional Conduct, to not "bring or continue an action, conduct a defense, assert a position in litigation, or take an appeal, without probable cause and for the purpose of harassing or maliciously injuring any person." (Cal. Rules Prof. Conduct, rule 3.1(a)(1).) This obligation is a near-perfect mirror of two

---

[5] *Vafi* and *Yee* rejected the argument that section 340.6(a) applied exclusively to claims by clients and former clients; *Lee* did not consider the issue. (*Yee, supra,* 220 Cal.App.4th at pp. 195–196; *Vafi, supra,* 193 Cal.App.4th at p. 882.) Because the statute's plain language does not so limit it (even if one of the statutory tolling provisions applies only to clients or former clients), and because *Lee* held the Legislature intended section 340.6(a) to apply more broadly than just to malpractice claims, we agree with *Vafi* and *Yee* that the statute is not limited to claims by clients and former clients.

of the three elements of malicious prosecution and implicates a lawyer's core professional duty to employ reasonable skill, prudence, and diligence in litigation. Thus, to the extent that legal malpractice concerns an attorney's failure to competently and professionally perform legal services—a highly relevant point of comparison for our purposes—malicious prosecution is a very similar claim.

In addition, malicious prosecution lawsuits against attorneys contribute to the cost of malpractice insurance, a key concern of the Legislature in enacting section 340.6(a). (See *Yee, supra,* 220 Cal.App.4th at p. 197 ["California courts have acknowledged that *malicious prosecution* actions have an impact on attorney malpractice insurance premiums and raise the costs of practicing law."].) Although a malpractice policy cannot provide indemnification for malicious prosecution claims, it can include the duty to defend against such claims. (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 487 ["the public policy precluding indemnification coverage for 'wilful acts,' as expressed in [Insurance Code] section 533, bars indemnification for any malicious prosecution claim for which an insured is personally liable in California" but "does not preclude" coverage for "a defense to such a claim"].) Whether such coverage is in fact included varies depending on the policy; however, one prominent commentator advises litigators to ensure such coverage is provided. (Mallen, Guide to Purchasing Legal Malpractice Insurance (2019 ed.) § 20:15 ["policies vary regarding coverage for . . . malicious prosecution"]; *id.,* § 2:46 ["coverage [for malicious prosecution claims] is essential for any litigator who ever seeks affirmative relief on behalf of a client"].) Accordingly, malicious prosecution claims are also akin to malpractice claims in that limiting the statute of limitations for such claims would likely further the Legislature's intent to " 'reduce[] the cost of legal malpractice insurance.' " (*Lee, supra,* 61 Cal.4th at p. 1234.)

Unlike its relationship to legal malpractice, a malicious prosecution claim stands in sharp contrast to claims *Lee* identified as falling outside of the statute's scope: an attorney's "garden-variety theft" or "sexual[] batter[y]," even when the conduct takes place during the legal representation. (*Lee, supra,* 61 Cal.4th at pp. 1237–1238.) While

10

an attorney's theft or sexual battery of a client may have been contemporaneous with the legal representation, it is intrinsically conduct that is incidental or ancillary to the provision of professional services itself. (See *id.* at p. 1238 ["Misconduct does not 'aris[e] in' the performance of professional services for purposes of section 340.6(a) merely because it occurs during the period of legal representation or because the representation brought the parties together and thus provided the attorney the opportunity to engage in the misconduct."].) *Flores v. Presbyterian Intercommunity Hospital* (2016) 63 Cal.4th 75 (*Flores*), which construed a statute of limitations for medical malpractice claims, is instructive on this point. The relevant statute applied to claims based on " 'a negligent act or omission to act by a health care provider in the rendering of professional services.' " (*Id.* at p. 84 [quoting § 340.5, subd. (2)].) The Supreme Court, relying in part on *Lee's* "analysis of the similarly worded statute of limitations governing actions against attorneys," held the medical malpractice statute "applies only to actions alleging injury suffered as a result of negligence in rendering the professional services that hospitals and others provide by virtue of being health care professionals: that is, the provision of medical care to patients." (*Flores,* at p. 88.) *Flores* involved a claim that the defendant hospital negligently maintained hospital equipment. (*Id.* at p. 79.) *Flores* explained, "whether negligence in maintaining hospital equipment or premises qualifies as professional negligence depends on the nature of the relationship between the equipment or premises in question and the provision of medical care to the plaintiff. A hospital's negligent failure to maintain equipment that is necessary or otherwise integrally related to the medical treatment and diagnosis of the patient implicates a duty that the hospital owes to a patient by virtue of being a health care provider. . . . But [the statute] does not extend to negligence in the maintenance of equipment and premises *that are merely convenient for, or incidental to, the provision of medical care to a patient*." (*Id.* at p. 88, italics added.) Considering "the nature of the relationship between the [wrongful conduct] and the provision of [professional legal services] to the plaintiff," theft and sexual battery is conduct that is merely "incidental to" the provision of professional services. (See *ibid.*) In contrast, the wrongful conduct when an attorney

11

engages in malicious prosecution *is the provision of professional services itself.* Thus, a comparison of malicious prosecution to legal malpractice—clearly covered by section 340.6(a)—and theft/sexual battery—clearly not—supports the conclusion that the claim falls within the scope of the statute.

However, appellant points to *Lee's* statement that, to fall within section 340.6(a), "the question is whether the claim, in order to succeed, necessarily depends on proof that an attorney violated a professional obligation *as opposed to some generally applicable nonprofessional obligation.*" (*Lee, supra,* 61 Cal.4th at p. 1238, italics added.) As appellant notes, the basic elements of a malicious prosecution claim—favorable termination, malice, and lack of probable cause—are the same regardless of whether the defendant was the attorney or the litigant in the underlying action. Appellant contends the statute thus, necessarily, does not apply to malicious prosecution. We reject the argument for two reasons.

First, *Lee's* requirement that an attorney's professional obligations not "overlap with obligations that all persons subject to California's laws have" arose in its rejection of the argument that section 340.6(a) "appl[ies] to all forms of attorney misconduct, except actual fraud, that occur during the attorney-client relationship or entail the violation of a professional obligation," a proposed construction that *Lee* held "sweeps too broadly." (*Lee, supra,* 61 Cal.4th at p. 1238.) The examples provided by *Lee* of wrongful conduct that violates both an attorney's professional obligations and generally applicable nonprofessional obligations involve conduct that is merely incidental to the provision of professional services: sexual battery and "garden-variety theft." (*Id.* at pp. 1238, 1240.) Thus, the test *Lee* established comparing professional obligations with generally applicable nonprofessional obligations appears to be targeted at determining when such incidental conduct is nonetheless covered by section 340.6(a). (See *id.* at p. 1239 [if conversion claim is based on allegation "that an attorney provided deficient legal services, then the plaintiff's claim will depend on proof that the attorney violated a professional obligation in the course of providing professional services" and be covered by § 340.6(a)]; *id.* at p. 1240 [discussing how the plaintiff's claim for return of unearned

12

attorney fees could depend on proof that the attorney violated a professional obligation, but could also depend on a violation of a generally applicable nonprofessional obligation].)  We find it highly unlikely that *Lee* intended this test to apply to claims based on wrongful conduct that is itself the provision of professional services, such as malicious prosecution.

Second, even if the test did apply to claims like malicious prosecution, there is a material difference in the respective obligations of attorneys and litigants to not engage in malicious prosecution.  We start with the probable cause element of malicious prosecution.  "[T]he existence of probable cause is a question of law to be determined as an objective matter.  [Citation.]  '[T]he probable cause element calls on the trial court to make an objective determination of the "reasonableness" of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable,' as opposed to whether the litigant subjectively believed the claim was tenable.  [Citation.]  A claim is unsupported by probable cause only if ' " 'any reasonable attorney would agree [that it is] totally and completely without merit.' " ' "  (*Parrish, supra,* 3 Cal.5th at p. 776.)

However, even where a claim lacked probable cause, " ' "[p]robable cause may be established by the defendants in a malicious institution proceeding when they prove that they have in good faith consulted a lawyer, have stated all the facts to him, have been advised by the lawyer that they have a good cause of action and have honestly acted upon the advice of the lawyer." ' "  (*Palmer v. Zaklama* (2003) 109 Cal.App.4th 1367, 1383.)  The reasoning underlying this advice-of-counsel defense—that litigants are entitled to rely in good faith on their lawyers' assessment of a claim's legal tenability—does not extend to attorneys.  Indeed, such an attempt was rejected in *Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, where an attorney of record in a shareholder action tried to defend against a subsequent malicious prosecution action on the ground that he "relied on [an associated attorney's] assessment of probable cause . . . since [the associated attorney] was the expert securities litigator."  (*Id.* at p. 1116.)  The Court of Appeal rejected the argument, noting the attorney defendant owed "a duty of

13

care to [his] clients that encompassed 'both a knowledge of the law and an obligation of diligent research and informed judgment,' " and when an attorney associates or consults with another attorney, "competent representation still requires knowing enough about the subject matter to be able to judge the quality of the attorney's work." (*Id.* at pp. 1116–1117.) The court concluded that attorneys "cannot avoid liability for malicious prosecution by claiming to have been ignorant of the merits of the allegations made" in the underlying litigation. (*Id.* at p. 1118; cf. *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP* (2010) 184 Cal.App.4th 313, 346 ["[A] lawyer is not immune from liability for malicious prosecution simply because the general area of law at issue is complex and there is no case law with the same facts that establishes that the underlying claim was untenable. Lawyers are charged with the responsibility of acquiring a reasonable understanding of the law governing the claim to be alleged. That achieving such an understanding may be more difficult in a specialized field is no defense to alleging an objectively untenable claim."].)

That the advice-of-counsel defense is available for litigants but not for lawyers is material for our purposes. Clients are entitled to rely in good faith on their attorneys' assessment of the legal tenability of a claim. But attorneys are *professionally obligated* to competently perform legal services by personally assessing the tenability of a claim before asserting it. This obligation—which cannot be avoided by a claim of good faith reliance on the advice of another attorney—is therefore "a professional obligation as opposed to some generally applicable nonprofessional obligation." (*Lee, supra,* 61 Cal.4th at p. 1238.)

We recognize that finding section 340.6(a) applicable to malicious prosecution claims against attorneys will result in a one-year statute of limitations for such claims, while a two-year statute of limitations will apply to malicious prosecution claims against litigants. The desirability of this result is not before us. (*Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co.* (2011) 194 Cal.App.4th 891, 909–910 [" 'Crafting statutes to conform with policy considerations is a job for the Legislature, not the courts; our role is to interpret statutes, not to write them.' "].) The Legislature can, of

14

course, enact legislation creating a single statute of limitations for all malicious prosecution claims if it wishes to do so.[6]

In sum, consistent with *Lee,* section 340.6(a) applies to malicious prosecution claims against attorneys who performed professional services in the underlying litigation. Because appellant filed his lawsuit more than one year after the unlawful detainer action's termination, his suit is time-barred as against Bornstein.

DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

---

[6] We note that in 1977, when section 340.6(a) was enacted, the statute of limitations generally applicable to malicious prosecution claims was one year. (*Stavropoulos, supra,* 141 Cal.App.4th at p. 194.)  This was extended to two years in 2002 (*ibid.*), creating the unequal limitations periods.  This may well have been an unintentional effect, particularly in light of the fact that no published opinion had yet held section 340.6(a) applicable to malicious prosecution claims against attorneys.  (Cf. *Flores, supra,* 63 Cal.4th at p. 82 ["The perhaps unintentional effect of the legislation [lengthening the statute of limitations for personal injury claims—including malicious prosecution claims—to two years] was to create a longer limitations period for ordinary negligence actions than for professional negligence actions not involving delayed discovery of the injury."].)

15

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

BURNS, J.

(A152375)

16

Superior Court of the City and County of San Francisco, No. CGC-14-541666, Hon. Ronald Quidachay, Judge.

Law Offices of Zelner & Karpel, Donald E. Karpel; Williams S. Yee for Plaintiff and Appellant.

Peretz & Associates, Yosef Peretz for Defendant and Respondent Daniel Bornstein. Bornstein and Bornstein, Daniel Bornstein, Dylan Tong -for Defendant and Respondent Bornstein and Bornstein.