Filed 4/29/16  Millsap v. Deutsche Bank Nat. Trust Co.  CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT


| | |
|---|---|
| BRENDA K. MILLSAP,<br><br>     Plaintiff and Appellant,<br><br>  v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee, etc., et al.,<br><br>    Defendants and Respondents. | B259456<br><br>(Los Angeles County<br> Super. Ct. No. LC100932) |


APPEAL from the judgment of the Superior Court of Los Angeles County. Huey P. Cotton, Judge.  Affirmed.

Stephen R. Golden & Associates, Stephen R. Golden and Elaine D. Etingoff for Plaintiff and Appellant.

Houser & Allison, Emilie K. Edling and Robert W. Norman for Defendants and Respondents.


\* \* \* \* \* \* \* \* \* \*

Plaintiff Barbara K. Millsap sued defendants Ocwen Loan Servicing, LLC (Ocwen) and Deutsche Bank National Trust Company (Deutsche Bank), as trustee, seeking to preempt a threatened foreclosure of her home based on the theory that defendants lacked authority to foreclose because they have no interest in the deed of trust as it was not transferred to the investment trust prior to its closing date. Plaintiff also alleges that defendants wrongfully scheduled trustee sales of the property while she was pursuing a loan modification. Her first amended complaint alleges causes of action for violation of the Homeowners Bill of Rights (HOBR; Civ. Code, § 2924, subd. (a)(3), (6); count 1); Civil Code section 2923.6 (count 2); Civil Code section 2923.5 (count 3); quiet title (count 4); breach of the implied covenant of good faith and fair dealing (count 5); and violation of Business and Professions Code section 17200 (count 6).

Plainly, plaintiff was trying to fit the allegations of her complaint into the theories that were then pending before the Supreme Court, and that were decided during the pendency of this appeal in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919 (*Yvanova*). The trial court sustained defendants' demurrer to the first amended complaint without leave to amend before *Yvanova* was decided. We requested and have considered supplemental briefing from the parties concerning the effect of *Yvanova* on this appeal. However, we find it is not necessary to construe the reach of *Yvanova* in resolving this appeal. Finding no abuse of discretion, we affirm the judgment.

## BACKGROUND

### 1. The First Amended Complaint and Judicially Noticed Facts

The following facts are taken from the first amended complaint and defendants' request for judicial notice. In 1995, plaintiff purchased a home located on Grimes Place in Encino. Ten years later, in 2005, she refinanced the property and obtained a $780,000 loan from Downey Savings and Loan Association (Downey) secured by a deed of trust. The deed of trust identified Downey as the beneficiary and lender, and DSL Service Company as trustee.

Downey assigned its interest under the deed of trust to Deutsche Bank in July 2005. On July 10, 2009, defendants recorded a notice of default and election to sell

2

under the 2005 deed of trust. The notice of default stated that plaintiff had defaulted on her loan on September 1, 2008, and owed delinquent payments totaling $45,450.81.

The assignment of the deed of trust and substitution of trustee were recorded on January 7, 2010. Western Progressive, LLC was substituted as trustee for DSL Service Company. The substitution was executed by Ocwen, acting as Deutsche Bank's "attorney-in-fact." Western Progressive also recorded a notice of trustee sale on January 7, 2010, setting a sale date of January 27, 2010. However, no trustee sale was ever conducted.

Between 2010 and 2012, plaintiff sought bankruptcy protection and also filed a superior court action against these same defendants alleging wrongful conduct in the origination of her loan. That lawsuit was dismissed, but the bankruptcy and earlier lawsuit apparently delayed defendants' efforts to foreclose on plaintiff's home.

Between January 2013 and October 2013, defendants scheduled several trustee sales of the property while plaintiff "was working with defendant to modify her loan." Ocwen approved a loan modification on August 8, 2013. But plaintiff could not afford this modification. In September 2013, plaintiff "consistently reached out to Ocwen representatives in order to receive mortgage assistance."

Sometime before October 14, 2013, defendants scheduled a trustee sale of the property for later that month. According to plaintiff, the parties were still negotiating a loan modification at the time. Plaintiff continued to communicate with Ocwen representatives in an effort to avoid foreclosure.

Plaintiff received an email from Ocwen's Office of the Consumer Ombudsman in mid-October 2013, acknowledging that Ocwen had "communicated . . . offers" to plaintiff, and stating that "Ocwen will not continue to postpone the foreclosure sale. . . ." However, the trustee sale did not take place as scheduled.

On November 19, 2013, plaintiff again asked Ocwen for a loan modification. She was offered another loan modification in December 2013 but could not afford this modification either. On December 11, 2013, Ocwen informed plaintiff that this was its final modification offer, and that the offer would only be reviewed if there was a material

change in plaintiff's income.  Plaintiff informed defendant that her estranged husband agreed to provide her with $1,000 per month, and that she wished to have her request for a modification reconsidered based on this change in her income.

In early January 2014, plaintiff rejected Ocwen's December 2013 "final" loan modification offer and submitted a "formal settlement demand and a complete first lien loan modification application" to Ocwen.  On January 13, 2014, plaintiff submitted "a contributor form" in addition to proof of deposit of the funds (presumably from her husband).  On February 4, Ocwen requested two consecutive paystubs, from the last 90 days.  Plaintiff provided them that same day.  On February 20, Ocwen requested an additional paystub, which plaintiff submitted five days later.

During this time, Ocwen scheduled weekly trustee sales which were postponed on a weekly basis.  On February 26, 2014, plaintiff contacted defendant and learned that the trustee sale scheduled for the next day had been postponed until March 6, 2014.  On March 5, 2014, defendants informed plaintiff that the March 6 sale had been cancelled, that her account was put on "hold," and there were no future sale dates scheduled.

## 2.     The Demurrer

Defendants demurred to the complaint, reasoning that plaintiff lacked standing to challenge the securitization of the deed of trust, that plaintiff had been offered loan modifications in compliance with HOBR which she rejected, and that plaintiff failed to allege tender to support a quiet title action.

In opposition, plaintiff argued that HOBR confers standing on borrowers to challenge the securitization process, and that it is the foreclosing entity's burden to demonstrate its authority to foreclose.  Plaintiff also contended that the first amended complaint could be amended to allege that defendants recorded a notice of trustee's sale in February 2013 while they were considering her request for a loan modification, in violation of Civil Code section 2923.6.  Plaintiff also argued that tender was not required.

The trial court sustained the demurrer in its entirety, and this action was dismissed on July 16, 2014.  This timely appeal followed.

4

## DISCUSSION

A demurrer tests the legal sufficiency of the complaint.  We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action.  For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law.  We also consider matters that may be judicially noticed.[1]  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  When a demurrer is sustained without leave to amend, as it was here, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm."  (*Ibid.*)

"The plaintiff bears the burden of proving there is a reasonable possibility of amendment. . . .  [¶]  To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' . . .  The plaintiff must clearly and specifically set forth the 'applicable substantive law' . . . and the legal basis for amendment, i.e., the elements of the cause of action and authority for it.  Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. . . .  Allegations must be factual and specific, not vague or conclusionary. . . .  [¶]  The burden of showing that a reasonable possibility exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. . . .  Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend. . . ."  (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44, citations omitted.)

---

[1]     Plaintiff takes no issue with defendants' request for judicial notice on appeal.

### A. Causes of action related to securitization of the deed of trust

Plaintiff's first cause of action for violation of Civil Code section 2924, subdivision (a)(3) and (6),[2] and fourth cause of action for quiet title, are based on the premise that defendants lacked authority to initiate a foreclosure sale on the theory that they do not have a beneficial interest in the deed of trust. Plaintiff posits that she may bring a preemptive lawsuit to challenge defendants' authority to initiate a nonjudicial foreclosure. The operative complaint alleges that plaintiff's note was assigned to a mortgage loan trust but the deed of trust securing her loan was not transferred into the trust until after the trust's closing date. The complaint also alleges "defendants have not provided any documentation that establishes the trust was properly formed and is still in existence." Plaintiff has not alleged any details about the securitized trust; she has not alleged what laws control the trust, when it was purportedly created or closed, or any other salient facts.

In *Yvanova*, the California Supreme Court found that a borrower has standing to bring a postforeclosure action for wrongful foreclosure where an alleged defect in the assignment renders the assignment *void* rather than merely *voidable*. (*Yvanova*, *supra*, 62 Cal.4th at pp. 934-935, 942-943.) We express no view about whether *Yvanova* applies to plaintiff's preforeclosure claims, because regardless of the reach of *Yvanova*, plaintiff has not stated a viable cause of action. Plaintiff has alleged the legal conclusion that the assignment of her deed of trust was "void," but has provided absolutely no facts supporting her conclusion that the assignment is void. Allegations that are legal

---

[2] Civil Code section 2924, subdivision (a)(3) provides that: "the mortgagee, trustee, or other person authorized to take the sale shall give notice of sale . . . ." Subdivision (a)(6) provides that: "No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest." These provisions took effect on January 1, 2013. (See Stats. 2012, ch. 86, § 10.) Plaintiff's claims are based on trustee sales which were scheduled to occur in 2013 and 2014.

conclusions must be disregarded and are insufficient to state a claim. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

The sole basis for plaintiff's claim that the assignment of her deed of trust is void is the legally untenable allegation that her note was transferred on a timely basis into the investment trust, but the deed of trust was not transferred before the closing date for formation of the investment trust. Under California law, a note secured by a deed of trust cannot be assigned separately from the deed of trust. "The deed of trust . . . is inseparable from the note it secures, and follows it even without a separate assignment." (*Yvanova*, *supra*, 62 Cal.4th at p. 927, citing Civ. Code, § 2936 and *Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 291; see also *Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543, 553 ["a deed of trust is a mere incident of the debt it secures and that an assignment of the debt 'carries with it the security.' "].)

Plaintiff does not contend she can allege any other facts to support a theory that the assignment of her note and deed of trust was void. In the absence of any salient facts pointing to a void assignment, plaintiff's causes of action necessarily fail. We need not consider plaintiff's remaining arguments that she has standing to bring this action under the HOBR, under the terms of the deed of trust, or under the Constitution, as all of these theories of standing rely on plaintiff's inadequately alleged securitization theory.

## B. Dual tracking claim

Plaintiff's second cause of action contends that defendants violated Civil Code section 2923.6, subdivision (c) by pursuing a trustee sale while the parties were negotiating a modification of plaintiff's loan. Section 2923.6, subdivision (c) provides that "[i]f a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until" certain conditions are satisfied.

7

This cause of action fails because plaintiff has not alleged, and does not seek leave to amend to allege that at any time after she submitted a complete application for a first lien loan modification, defendants recorded a notice of default or notice of sale (and there has never been a trustee's sale). Civil Code section 2923.6, subdivision (c) only forbids the *recording* of a notice of default or notice of sale, or *conducting* a trustee's sale, while a borrower's "complete application for a first lien loan modification" is pending. However, nowhere in her first amended complaint, opposition to the demurrer, or her appellate brief does plaintiff offer any facts specifying if and when she submitted "a complete application for a first lien loan modification," except only her allegation that she submitted such an application in January 2014. The complaint does *not* allege that defendants recorded a notice of default or notice of sale any time after January 2014.

The complaint alleges that plaintiff was *offered* a modification in August 2013 that she did not accept, and other modifications in October and December 2013 that she also did not accept. The only time plaintiff alleged she *submitted a complete application* for a loan modification is on January 3, 2014, when she submitted a "formal settlement demand and a complete first lien loan modification application" to Ocwen. While the modification was being considered, Ocwen *scheduled* weekly trustee sales which it postponed on a weekly basis. Ultimately, the scheduled sale was cancelled, plaintiff's account was put on "hold," and no future sale dates were scheduled.

Plaintiff seeks leave to amend to add allegations that defendants recorded a notice of trustee sale in February 2013, and that same month, she was under review by defendants for a loan modification. Plaintiff does *not* seek leave to amend that she had submitted a complete loan application to defendants in or before February 2013. Plaintiff does not seek leave to amend that defendant ever *recorded* any notice of trustee sale after February 2013. Plaintiff only generally alleges that trustee sales were *scheduled* in February and March 2014, and then cancelled. Civil Code section 2923.6, subdivision (c) does not forbid the scheduling of trustee sales following the recording of a notice of trustee sale. Following the recording of a notice of sale, the actual sale date can be postponed a number of times without recording a new notice. (See, e.g., §§ 2924,

8

2924f, 2924g.)  Therefore, plaintiff has failed to state a claim for violation of section 2923.6.

### C.   Remaining claims

Plaintiff has provided no discussion of her claims for violation of Civil Code section 2923.5 or breach of the implied covenant of good faith and fair dealing in her appellate brief.  Therefore, we conclude that she has abandoned these causes of action on appeal, and that any claim of error has been waived.  (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99; see *Yee v. Cheung* (2013) 220 Cal.App.4th 184, 193, fn. 6 [failure to address all causes of action subject to demurrer forfeits any claim of error concerning causes of action not raised on appeal].)

Lastly, to the extent that plaintiff's sixth cause of action for violation of Business and Professions Code section 17200 is based on plaintiff's deficiently alleged claims, such Civil Code section 2923.6, subdivision (c), it also fails.  (See *Price v. Starbucks Corp.* (2011) 192 Cal.App.4th 1136, 1147.)

### DISPOSITION

The judgment is affirmed.  Respondents are to recover their costs on appeal.


GRIMES, J.


WE CONCUR:

BIGELOW, P. J.



FLIER, J.


9