Filed 8/24/22  Reyes v. Escobar CA2/7

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| EMILIO REYES,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>LORRAINE ANN ESCOBAR et al.,<br><br>    Defendants and Respondents. | B313575<br><br>(Los Angeles County<br>Super. Ct. No. BC724250)<br><br>ORDER MODIFYING OPINION<br><br>(NO CHANGE IN THE APPELLATE JUDGMENT) |

THE COURT:

Appellant Emilio Reyes's request to modify the above-entitled opinion filed on August 12, 2022 is granted.  The opinion is modified as follows:

On page 4, in the last sentence of the first paragraph, add the words "great-great" after "Reyes's" and before "grandmother" so the sentence reads:

> The attached statement (2013 BIA statement) identified "Mary (Gryalba) Bega," who "is named on the Original 1928 Roll of California Indians," as Reyes's great-great grandmother.

There is no change in the appellate judgment.

_____
SEGAL, Acting P.J.        FEUER, J.        WISE, J.*

---

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 8/12/22  Reyes v. Escobar CA2/7 (unmodified opinion)
# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| EMILIO REYES,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>LORRAINE ANN ESCOBAR et al.,<br><br>    Defendants and Respondents. | B313575<br><br>(Los Angeles County<br>Super. Ct. No. BC724250) |

APPEAL from an order of the Superior Court of Los Angeles County, Mel Red Recana, Judge.  Affirmed in part; reversed in part.

Emilio Reyes, in pro. per., for Plaintiff and Appellant.

Lorraine Ann Escobar, in pro. per., for Defendant and Respondent Lorraine Ann Escobar.

Law Office of Michael F. Sisson and Michael F. Sisson for Defendant and Respondent Alexandra R. McIntosh, APC.

Emilio Reyes appeals from an order granting the special motions to strike (Code Civ. Proc., § 425.16; anti-SLAPP statute)[1] filed by defendants Lorraine Ann Escobar and Alexandra R. McIntosh, APC.  Reyes brought causes of action for negligence, defamation, invasion of privacy, intentional infliction of emotional distress, stalking, unfair business practices, and professional negligence based on allegations he gave confidential information concerning his Native American ancestry to McIntosh in her capacity as an attorney to evaluate Reyes's standing to participate in a lawsuit for which McIntosh was counsel.  McIntosh then shared the information with Escobar, and McIntosh and Escobar published a report based on the information by distributing it to the Bureau of Indian Affairs (BIA) and others, and posting it on public websites.  The trial court found McIntosh's and Escobar's conduct was protected activity and Reyes failed to show a likelihood of prevailing on his claims.  On appeal, Reyes contends the trial court abused its discretion in entertaining Escobar's late-filed special motion to strike, and Escobar's and McIntosh's conduct is not protected activity.

We agree the trial court abused its discretion in considering Escobar's untimely special motion to strike and reverse as to Escobar.  We also reverse the court's grant of McIntosh's special motion to strike as to Reyes's cause of action for professional

---

[1]      "A 'SLAPP' is a '"strategic lawsuit against public participation . . . ."'" (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1007, fn. 1.)  Further undesignated statutory references are to the Code of Civil Procedure.

negligence but affirm as to the remaining causes of action against McIntosh.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Parties*[2]

Reyes alleges in his first amended complaint he is a descendent of members of the Tongva faction of the Gabrielino tribe.  The Gabrielino tribe is not federally recognized.  Reyes alleges further the federal government misclassified him and his family members as descendants of members of the Diegueno tribe (also not federally recognized), and not the Gabrielino tribe.  According to Reyes, 11 non-federally recognized "factions" claim they are descended from members of the Gabrielino tribe, including the Gabrieleño[3] Band of Mission Indians known as the Kizh Nation.

In 2013 Reyes applied to the BIA for a certification of Indian blood.  On February 21, 2013 the BIA issued a letter to Reyes  acknowledging his application and noting "applicant[s] must show their relationship to an enrolled member(s) of a federally recognized Indian tribe to receive a certification of degree of Indian blood."  (Boldface and italics omitted.)  The letter

---

[2]     The factual background is taken from the declarations filed in support of and in opposition to defendants' special motions to strike (§ 425.16, subd. (b)), as well as Reyes's first amended complaint.

[3]     The factions of the tribe and parties use the terms "Gabrielino," "Gabrieleno," or "Gabrieleño" to refer to the tribe. We use the spelling that each party references in his or her pleadings.

explained Reyes was affiliated with a non-federally recognized tribe, and thus, the BIA was "unable to issue [Reyes] a certification of Indian blood."  Instead, the letter attached a certification based on information in BIA records "verifying [Reyes is] of California Indian descent" and of ancestry related to a "non-federally recognized tribe."  (Boldface and italics omitted.)  The attached statement (2013 BIA statement) identified "Mary (Gryalba) Bega," who "is named on the Original 1928 Roll of California Indians," as Reyes's grandmother.

McIntosh is an attorney licensed to practice in California, who represents "nearly 200 . . . enrolled members of the San Pasqual Band of Mission Indians" seeking to gain federal recognition of their membership in the tribe (San Pasqual lawsuit).  In August 2014, before filing the San Pasqual lawsuit, McIntosh sent Reyes a message on a social media website, introducing herself as an attorney seeking Native American clients and offering affordable representation and pro bono services.  In November 2014, upon McIntosh's invitation, Reyes visited McIntosh at her home to discuss her intent to file the San Pasqual lawsuit.

According to Reyes, in January 2015 McIntosh requested from Reyes a copy of the 2013 BIA statement, explaining "it may give you a basis to join our lawsuit."  McIntosh "made [Reyes] believe[] [he] would be a plaintiff" in the San Pasqual lawsuit.  On January 15, 2015 Reyes provided to McIntosh copies of his birth certificate and the 2013 BIA statement.  McIntosh then agreed to provide Reyes with legal services.

McIntosh failed to keep Reyes's documents confidential, instead distributing his birth certificate and the 2013 BIA statement without Reyes's authorization to certified genealogist

4

Escobar and Kizh Nation Resource Management (KNRM).[4]  On September 15, 2017 Escobar contacted Reyes's colleague Rick Cuevas by email with information on Reyes's "tribal identity," including the documents Reyes shared with McIntosh.  Escobar asked Cuevas whether he was "interested in looking at a couple documents about Emilio Reyes. . . .  I am wondering if you might want to reconsider [allowing Reyes to post on your website[5]] once you see what I have found.  I know Emilio is not a Gabrieleno Indian descendant.  I don't think he is [of] California Indian descent at all."  Cuevas sent Escobar's message to Reyes.

On September 17, 2017 Reyes sent an email to Escobar "directing her to destroy all [of Reyes's] personal information and documents" and requesting Escobar inform McIntosh and Andrew Salas of KNRM to do the same.  Later the same day McIntosh sent an email to Reyes accusing him of "'telling lies' about her."  McIntosh "threaten[ed]" Reyes, stating, "[I]f you['re] challenging me to get to the bottom of your lineage[,] I can, and I will."  McIntosh "intended to influence Escobar to issue a report on [Reyes]" and his genealogy.

Reyes later learned Escobar authored a report dated October 13, 2017 and titled "The Case of Maria (nee: Grijalva) Bega, Guillermo Grijalva, and Aurelia . . . (nee: Grijalva) Orosco" (the report).  The report relied on the 2013 BIA statement that

---

[4]      Although Reyes alleged in his complaint and first amended complaint KNRM and the Kizh Nation are the same entity, in his opening brief he acknowledges KNRM is "a for-profit corporation" and "not a tribe."

[5]      Cuevas is "the owner of Original Pechanga Blog on Tribal Disenrollment, a leading Native American website" published since 2007.

Reyes had shared with McIntosh. Escobar published the report on the KNRM website. She also attached the report to a letter she sent on October 13 to Javin Moore, superintendent of the BIA, with copies to additional officials at the BIA and the Department of the Interior, members of the California Native American Heritage Commission (NAHC),[6] and Salas (BIA letter). Escobar stated in the BIA letter, "I am writing to you to submit a correction to the data your offices collected from the 1928 California Indian Judgment Act and subsequent enrollments. Although you may believe matters regarding descendants from unacknowledged tribes is not your priority, I urge you to read on and reconsider your position because you have the power to right a wrong against authentic California Indians."

Escobar also shared her doubts about the legitimacy of Reyes's claims of Indian ancestry with "prominent Native American journalists." Later, Escobar published the report on the website Ancestry.com.

---

[6] According to its website, the NAHC was "created in statute in 1976 (Chapter 1332, Statutes of 1976), [and] is a nine-member body whose members are appointed by the Governor. The NAHC identifies, catalogs, and protects Native American cultural resources—ancient places of special religious or social significance to Native Americans and known ancient graves and cemeteries of Native Americans on private and public lands in California. The NAHC is also charged with ensuring California Native American tribes' accessibility to ancient Native American cultural resources on public lands, overseeing the treatment and disposition of inadvertently discovered Native American human remains and burial items, and administering the California Native American Graves Protection and Repatriation Act (CalNAGPRA), among many other powers and duties." (<https://nahc.ca.gov/about/> [as of August 12, 2022].)

The report posited that many Mexicans had illegally enrolled as Indians in 1928 under the California Indian Jurisdictional Act, and the BIA used the data collected in 1928 to issue Certificates of Degree of Indian Blood to individuals who did not have Indian ancestry. The report sought to correct the enrollment records to stop the "identity theft" and "fraud" that resulted from the enrollment errors and harmed California Native American Indians by, for example, allowing the individuals to claim ancestral bones of authentic descendants of California Indian tribes. (Boldface and italics omitted.) The report asserted, "The California Native American Heritage Commission . . . enables identity theft by relying on the authority of the [BIA] to determine eligibility for participation in repatriation." The report focused on the BIA's decision in 1933 to place three non-Indian siblings and their children on the 1933 California Indian Judgment Roll, including Reyes's great-great grandmother Mary Bega. The report accused the BIA of "continu[ing] to issue verification letters to the descendants" of the three siblings. As to Reyes, the report stated, "In 2013, the BIA declared Emilio Reyes was Diegueno Indian (with no blood quantum mentioned) and Mary (Gryalba) Bega was his great-great grandmother," citing the 2013 BIA statement. (Italics omitted.)

B.   *Reyes's Complaint*

On October 4, 2018 Reyes filed a complaint against Escobar, KNRM,[7] and 20 Doe defendants, alleging causes of action for negligence, defamation, invasion of privacy, and unfair

_____

[7]    KNRM is not a party to this appeal.

business practices.  The complaint alleged Escobar and KNRM published a report on the Kizh Nation website describing Reyes's "family history without consent."  Further, the report contained "false and misleading statements about [Reyes's] ancestry," including that in 1928 Reyes's ancestors fraudulently posed as and were erroneously enrolled in a census of California Native Americans.  Reyes alleged publication of the report injured his reputation and caused him shame and embarrassment.  Further, Escobar and KNRM acted with malice, motivated by the "desire to 'get' enrolled Native Americans with Mexican heritage[]."

C.    *The First 17 Months of Litigation*

On December 4, 2018 Escobar and KNRM, both represented by McIntosh, filed an answer generally denying the allegations in the complaint.  On December 10 Reyes filed a motion to disqualify McIntosh, arguing McIntosh had a conflict of interest due to prior representation of Reyes "involving the very issues involved in this litigation."  On January 17, 2019, in response to Escobar's requests for admission, form and special interrogatories, and requests for production of documents seeking communications between Reyes and McIntosh, Reyes filed a motion for a protective order to prevent disclosure of documents Reyes asserted were protected by the attorney-client privilege.  Escobar filed oppositions to both motions.

On February 15, 2019 the trial court denied Reyes's motion for a protective order.  Reyes appealed, and on September 12, 2019 we dismissed Reyes's appeal as having been taken from a nonappealable order.  (*Reyes v. Escobar et al.* (Sept. 12, 2019, B295897).)

On January 28, 2020 KNRM filed a substitution of attorney, substituting Neville L. Johnson for McIntosh. On March 26 Reyes again moved to disqualify McIntosh from representing Escobar. On April 10 Escobar filed a substitution of attorney, substituting herself (as a self-represented litigant) for McIntosh. Above her signature on the filing, Escobar wrote, "I do not agree that Alexandra McIntosh was ever authorized counsel." (Capitalization omitted.) On July 7, 2020 the trial court found Reyes's motion to disqualify McIntosh was moot in light of the attorney substitutions.

D. *The First Amended Complaint*

On March 2, 2020 Reyes filed a request for leave to file a first amended complaint. KNRM and Escobar opposed the amendment. On July 31, 2020 the court granted Reyes leave to amend. On the same day Reyes filed a verified first amended complaint, naming McIntosh as a defendant[8] and adding causes of action for the intentional infliction of emotional distress and stalking against all defendants and professional negligence against McIntosh. Further, Reyes amended his cause of action for invasion of privacy to allege Reyes possesses "a legally protected privacy interest in his Native heritage and lineage." Reyes also added an allegation that "Defendants have been acting . . . unlawful[ly] . . . as the sole self-appointed agents and final authorities in determining who is and who is not a Native American, which is in direct disregard to the authority of the [BIA] to determine the identity of a Native American."

---

[8] The first amended complaint also named as a defendant the Board for Certification of Genealogists, which is not a party to this appeal.

9

Reyes's cause of action for intentional infliction of emotional distress alleges defendants' defamatory statements were "continuous, intentional and outrageous" and proximately caused injury to Reyes. Reyes alleges as to his stalking cause of action that the defendants "repeatedly followed and [engaged in] willfully harassing methods by harassing, intimidating, tormenting, embarrassing, [and] bullying against [Reyes] and . . . third-party contacts," which caused Reyes to suffer from post-traumatic stress disorder and extreme anxiety disorders.

As to the cause of action for professional negligence, Reyes alleges McIntosh breached her duty of confidentiality to Reyes based on the attorney-client relationship and violated State Bar Rules of Professional Conduct, former rule 3-100 by disclosing confidential information without Reyes's authorization. Further, McIntosh failed to provide competent representation to Reyes and "effectively abandoned" him.

E. *McIntosh's Special Motion To Strike*

On September 27, 2020 McIntosh filed a special motion to strike the first amended complaint. McIntosh argued her communications about Reyes were written or oral statements in a public forum in connection with an issue of public interest—"[t]he issue of admission into a Native American tribe." Further, Reyes could not show a probability of prevailing on the merits because the statute of limitations, claim preclusion (described as res judicata),[9] and judicial estoppel barred Reyes's claims; McIntosh's statements were opinions and constitutionally protected;

_____

[9] McIntosh asserted claim preclusion barred Reyes's claims based on Reyes's prior unsuccessful petition for a civil harassment restraining order against McIntosh.

McIntosh was never Reyes's attorney; and Reyes's cause of action for unfair business practices failed to state a claim.

In his opposition, Reyes argued McIntosh failed to make a prima facie showing her conduct constituted protected activity, and there was a probability of Reyes prevailing on the merits. Reyes submitted a declaration and request for judicial notice in support of his opposition. McIntosh filed a reply and reply declaration, in which she denied ever acting as Reyes's attorney. McIntosh submitted with her reply internet posts by or concerning Reyes, which she asserted showed tribal enrollment and disenrollment are matters of public interest and Reyes is a limited public figure for his work on those issues.

At a February 10, 2021 hearing on McIntosh's special motion to strike, the trial court continued the hearing and requested further briefing. McIntosh filed a supplemental brief, and Reyes filed a supplemental opposition with declarations from Reyes, Cuevas, and others. McIntosh then filed a supplemental reply and reply declaration.

F.    *Escobar's Default, Motion To Set Aside Default, and Special Motion To Strike*

Escobar failed to respond to the first amended complaint, which Reyes served by mail on August 25, 2020. On October 1, 2020 Reyes filed a request for entry of default against Escobar, which the clerk entered the same day.

On October 6, 2020 Escobar, despite the default, filed a joinder in McIntosh's special motion to strike. On November 3 Escobar filed a motion to set aside the default and request for court judgment, arguing she failed to file a responsive pleading because of her mother's death in July 2020. On February 1, 2021

11

Escobar filed an amended motion to set aside or void entry of default with a proposed answer and supporting declaration and exhibits. Escobar averred she had a health condition that impacted her "ability to produce timely court filings." On February 25 Escobar filed an amended declaration in support of her motion.

On March 5, 2021 the trial court granted Escobar's motion to set aside the default. On March 8 Escobar filed a verified answer to the first amended complaint, and on March 10 she filed a special motion to strike the first amended complaint. Escobar argued the claims in the first amended complaint arose from protected activity and Reyes could not show a probability of prevailing on his claims because the report was not defamatory; the report was a true and fair report; Reyes was a limited-purpose public figure and could not show Escobar acted with malice; and Escobar's communications were privileged under Civil Code section 47, subdivision (b).

Reyes opposed Escobar's motion, arguing, inter alia, the motion was untimely because it was filed more than two years after Escobar was served with the complaint.

G.    *The Trial Court's Ruling*

After a hearing on June 2, 2021, the trial court granted McIntosh's and Escobar's special motions to strike the first amended complaint. As to McIntosh's motion, the court in its written ruling found the publication of the report to governmental agencies was a written statement before an official proceeding authorized by law, and thus constituted protected activity under section 425.16, subdivision (e)(1). The court reasoned, "The language of the [BIA] letter shows that

12

[McIntosh] was attempting to prompt administrative action to change a system of records, which allegedly relies on flawed or incorrect data." The court found publication of the report on the Kizh Nation website was conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with an issue of public interest, and thus was protected activity under section 425.16, subdivision (e)(4).

The trial court found Reyes had not shown a probability of prevailing on the merits of his claims. As to Reyes's claim against McIntosh for professional negligence, the court reasoned, "[Reyes] does not establish any legal services upon which to base this cause of action. [Reyes] attests that [McIntosh] wanted him to join a San Pasqual Lawsuit and asked for a copy of Reyes's [2013 BIA statement] for this purpose. [Citation.] But, [Reyes] fails to establish that he ever agreed to join the San Pasqual Lawsuit or that [Reyes] not joining the lawsuit caused him any damages." As to Reyes's claim for negligence, the court found Reyes had failed to establish McIntosh owed any duty of care to Reyes with respect to Reyes's private information. The court found with respect to Reyes's claim for defamation that Reyes was a limited public figure and failed to established McIntosh acted with actual malice in publishing the report. The court found the statute of limitations barred Reyes's claim for invasion of privacy. As to Reyes's claim for unfair business practices, the court found Reyes adduced no evidence McIntosh unlawfully obtained money or property from him. The court found Reyes's claim for intentional infliction of emotional distress was duplicative of his claim for defamation and thus failed. The court concluded Reyes failed to address his stalking cause of action in

his opposition papers, and therefore did not carry his burden to show a probability of success on the claim.

The court considered Escobar's special motion to strike, rejecting Reyes's argument the motion was untimely.  The court reasoned, "[T]he Anti-SLAPP deadline is entirely discretionary, as expressly stated in the statutes."  The court held its ruling on McIntosh's motion applied to Escobar's motion at both steps of the anti-SLAPP analysis.

Reyes timely appealed.

## DISCUSSION

A.     *The Trial Court Abused Its Discretion in Ruling on Escobar's Late-filed Special Motion To Strike*
       1.     *Governing law and standard of review*
"Section 425.16 'provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity.'" (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 642 (*Newport Harbor*); accord, *Zhang v. Jenevein* (2019) 31 Cal.App.5th 585, 592.)  "'Because these meritless lawsuits seek to deplete "the defendant's energy" and drain "his or her resources" [citation], the Legislature sought "'to prevent SLAPPs by ending them early and without great cost to the SLAPP target.'"'"  (*Newport Harbor*, at p. 642; *Zhang*, at p. 592 ["section 425.16 seeks to limit the costs of defending against [a SLAPP]"].)  "'An anti-SLAPP motion is not a vehicle for a defendant to obtain a dismissal of claims in the middle of litigation; it is a procedural device to prevent costly, unmeritorious litigation at the initiation of the lawsuit.'" (*Newport Harbor*, at p. 645; accord, *San Diegans for Open*

14

*Government v. Har Construction, Inc.* (2015) 240 Cal.App.4th 611, 625-626 (*San Diegans*).)

Section 425.16, subdivision (f), provides in relevant part, "The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." Subdivision (f) "permit[s] an anti-SLAPP motion against an amended complaint if it could not have been brought earlier, but . . . prohibit[s] belated motions that could have been brought earlier (subject to the trial court's discretion to permit a late motion)." (*Newport Harbor, supra*, 4 Cal.5th at p. 645.) Upon the filing of a special motion to strike, all discovery proceedings are stayed, and an order granting or denying the motion is appealable; an appeal, in turn, automatically stays further trial court proceedings on the merits. (*Ibid*.) "In this unusual statutory context, in which a party has the right to an interlocutory appeal of a denial of anti-SLAPP motion, a trial court must be wary about freely granting a party the right to file an anti-SLAPP motion past the 60-day deadline." (*Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 787 (*Platypus*); accord, *San Diegans, supra*, 240 Cal.App.4th at p. 624.)

"A trial court's ruling on an application to file a late anti-SLAPP motion is reviewed for an abuse of discretion." (*Platypus, supra*, 166 Cal.App.4th at p. 782; accord, *Kieu Hoang v. Phong Minh Tran* (2021) 60 Cal.App.5th 513, 526.) "While a trial court enjoys considerable discretion regarding whether to allow the late filing of an anti-SLAPP motion," a court in exercising that discretion must consider the purpose of the anti-SLAPP statute, the length of the delay, the reasons offered by the moving party for the delay, and the potential prejudice to the plaintiff.

(*Platypus*, at pp. 784, 787 [trial court abused its discretion in ruling on special motion to strike filed nearly two years after the filing of the complaint, where at the time the motion was filed "the parties had already completed a substantial amount of discovery, and the trial was scheduled to commence in less than three months"]; see *Newport Harbor, supra*, 4 Cal.5th at p. 645 [affirming trial court's denial of special motion to strike filed after plaintiff filed a third-amended complaint where "much litigation, including discovery, had already been conducted for two years before the anti-SLAPP motion brought it to a halt," and it was "far too late for the anti-SLAPP statute to fulfill its purpose of resolving the case promptly and inexpensively"]; *San Diegans, supra*, 240 Cal.App.4th at p. 624 [trial court abused its discretion in considering special motion to strike filed 16 months after first amended complaint was filed where the parties litigated various motions and served and responded to written discovery requests]; cf. *Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 285-286 [trial court did not abuse its discretion in denying as untimely anti-SLAPP motion filed 278 days after service of complaint].)

####    2.    *The trial court abused its discretion*
Reyes argues the trial court abused its discretion in ruling on Escobar's special motion to strike given the length of the delay, completion of substantial discovery, and litigation of multiple motions. Escobar offers no explanation in response for why she failed to file her motion earlier, simply relying on the trial court's reasoning that "'the Anti-SLAPP deadline is entirely discretionary, as expressly stated in the statute.'" (Boldface and italics omitted.) Reyes's argument is persuasive.

16

Escobar's special motion to strike was not filed within 60 days of service of the complaint or the first amended complaint. Reyes served the complaint on Escobar by substituted service on November 30, 2018.[10] And Reyes served the first amended complaint on Escobar by mail on August 25, 2020. Escobar filed the special motion to strike the first amended complaint on March 10, 2021. Thus, adding 10 days for substituted service of the complaint (§ 415.20, subd. (a)) and five days for service by mail of the first amended complaint (§ 1013, subd. (a)), Escobar filed her motion 821 days (more than 27 months) after service of the complaint and 192 days after service of the first amended complaint.

Escobar acknowledges the case was litigated for almost "three years" with "hundreds of filings" and "nearly 100 related hearings." Indeed, the parties had engaged in considerable discovery and motion practice, with both Escobar and Reyes propounding discovery and filing multiple motions to compel discovery responses and further discovery responses. Further, the parties litigated Reyes's motions to disqualify McIntosh and for a protective order regarding attorney-client privileged documents (in response to Escobar's propounded discovery), as well as Reyes's request for leave to file an amended complaint.

Escobar presented no reason why she could not have moved to strike the causes of action as alleged in the original complaint. The four causes of action against Escobar alleged in the complaint (negligence, defamation, invasion of privacy, and unfair business practices) were all based on allegations Escobar

---

[10] On our own motion we augment the record to include the November 20, 2018 proof of service of the complaint on Escobar. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

published the report based on Reyes's private information. And as Escobar acknowledged in her respondent's brief, in January 2019 (within the 60 days) she asked her then-attorney McIntosh to file a special motion to strike the complaint, but McIntosh "opted to pursue her own strategies." Yet Escobar moved to strike the four causes of action in her special motion to strike the first amended complaint without providing any justification for her 821-day delay.

As to the two additional causes of action alleged against Escobar in the first amended complaint, Reyes's claim for intentional infliction of emotional distress relies solely on the factual allegations underlying her defamation cause of action in the original complaint, and Reyes's claim for stalking does not allege any protected activity, only generally alleging Escobar and the other defendants engaged in "harassing methods." Thus, Escobar has failed to show her "anti-SLAPP motion against [the] amended complaint . . . could not have been brought earlier" against the complaint. (*Newport Harbor, supra*, 4 Cal.5th at p. 645.) Moreover, Escobar provides no explanation for the 192-day delay in bringing her motion after service of the first amended complaint.[11]

The trial court's apparent belief it possessed unfettered discretion to rule on any late-filed special motion to strike regardless of the circumstances is inconsistent with the requirement the court consider the length of the delay, the reasons offered for the delay, and potential prejudice to the

---

[11] We recognize Escobar was in default for a substantial portion of this period after the filing of the first amended complaint, but Escobar does not argue that her default extended the deadline for filing a special motion to strike.

18

plaintiff.  (*San Diegans, supra*, 240 Cal.App.4th at p. 624; *Platypus, supra*, 166 Cal.App.4th at p. 782.)  Under the circumstances here, the court abused its discretion in ruling on Escobar's late-filed special motion to strike the first amended complaint.

B.     *The Trial Court Erred in Granting McIntosh's Special Motion To Strike the Professional Negligence and Negligence Causes of Action but Properly Dismissed Reyes's Other Causes of Action*

1.     *Governing law and standard of review*

A cause of action arising from an act in furtherance of a defendant's constitutional right of petition or free speech in connection with a public issue is subject to a special motion to strike unless the plaintiff demonstrates a probability of prevailing on the claim.  (§ 425.16, subd. (b)(1); see *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009; *Baral v. Schnitt* (2016) 1 Cal.5th 376, 381 (*Baral*).)  An "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue'" includes, in relevant part, "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" (§ 425.16, subd. (e)(1)) and any "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" (*id.*, subd. (e)(4)).

"Litigation of an anti-SLAPP motion involves a two-step process.  First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e]

from" protected activity in which the defendant has engaged.' [Citation.]  Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."' [Citation.]  If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System, supra*, 11 Cal.5th at p. 1009; accord, *Baral, supra*, 1 Cal.5th at p. 384.)

As part of the second step, we apply a ""'summary-judgment-like procedure." [Citation.]  The court does not weigh evidence or resolve conflicting factual claims.  Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.  It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.  [Citation.] "[C]laims with the requisite minimal merit may proceed."'"" (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940; accord, *Baral, supra*, 1 Cal.5th at pp. 384-385.)

We review de novo the grant or denial of a special motion to strike.  (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

> 2.    *The trial court erred in finding Reyes's causes of action for professional negligence and negligence arose from McIntosh's protected activity*

Reyes contends his claims for professional negligence and negligence did not arise from McIntosh's protected activity because the claims were based on McIntosh's breach of her duty

20

to Reyes as his current or former attorney by disclosing his confidential information without informed consent, in violation of rule 1.6 of the State Bar Rules of Professional Conduct.[12] McIntosh argues Reyes's claim is not based on attorney misconduct, but rather, arises from her "lobbying efforts directed towards administrative agencies." Reyes is correct.

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University*, *supra*, 2 Cal.5th at p. 1062; accord*, City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) "'[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.'" (*Park*, at p. 1063; accord *Cotati*, at pp. 76-77.) "Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' [Citation.] . . . [I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park*, at p. 1063, italics omitted; accord, *Bonni, supra*, 11 Cal.5th at p. 1009 ["The defendant's burden is to

---

[12] Rules of Professional Conduct, rule 1.6(a) (formerly rule 3-100) provides in relevant part, "A lawyer shall not reveal information protected from disclosure by Business and Professions Code section 6068, subdivision (e)(1) unless the client gives informed consent . . . ." (Fn. omitted.) Business and Professions Code section 6068, subdivision (e)(1), in turn, provides that it is the duty of an attorney to "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client."

identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity."].)

"The elements of a claim for professional negligence are "'(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.""" (*Paul v. Patton* (2015) 235 Cal.App.4th 1088, 1095; accord, *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122.) In an action for professional negligence, the Rules of Professional Conduct inform the scope of an attorney's duty. (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1128; accord, *Connelly v. Bornstein* (2019) 33 Cal.App.5th 783, 794-795 [an attorney's violation of the Rules of Professional Conduct "implicates a lawyer's core professional duty to employ reasonable skill, prudence, and diligence in litigation"]; cf. *Slovensky v. Friedman* (2006) 142 Cal.App.4th 1518, 1534-1535 ["'The scope of an attorney's [fiduciary] duty may be determined as a matter of law based on the Rules of Professional Conduct'"].)

Although generally an attorney's litigation-related activities, including the filing and prosecution of a civil action on behalf of a client, are considered acts in furtherance of a person's right of petition, "numerous cases have held that 'actions based on an attorney's breach of professional and ethical duties owed to a client' are generally not subject to section 425.16 'even though protected litigation activity features prominently in the factual background.'" (*Sprengel v. Zbylut* (2015) 241 Cal.App.4th 140,

22

151; accord, *Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 488, 491 [section 425.16 does not apply to claims an attorney committed "ethical violations, including breaches of the duties of loyalty and confidentiality owed to [the plaintiffs] as former clients under the State Bar Rules of Professional Conduct"]; see *Yeager v. Holt* (2018) 23 Cal.App.5th 450, 457 [a typical attorney malpractice suit is not subject to the anti-SLAPP procedures]; *PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1228 ["it is unreasonable to interpret [section 425.16] to include a client's causes of action against the client's own attorney arising from litigation-related activities undertaken for that client"].)

McIntosh does not dispute Reyes's claim for professional negligence asserts liability based on McIntosh's breach of her professional duties arising from an express or implied attorney-client relationship.[13] The first amended complaint alleges "without the knowledge or consent of [Reyes], McIntosh distributed all of [Reyes's] personal information to [d]efendants Escobar and KNRM" in violation of Rules of Professional Conduct, rule 1.6, which conduct fell "below the standard of care for attorneys in the practice of law in the state of California." Thus, the activity that forms the basis for Reyes's claim for professional negligence is McIntosh's failure to maintain the

---

[13] In the trial court, McIntosh argued she did not have an attorney-client relationship with Reyes. McIntosh has abandoned this argument on appeal. Regardless, "[w]hether [Reyes] actually shared an attorney-client relationship with [McIntosh] relates to the merits of [Reyes's] claims and is therefore not relevant to our first prong analysis." (See *Sprengel v. Zbylut, supra*, 241 Cal.App.4th at p. 157.)

23

confidentiality of private information Reyes provided her in the course of their attorney-client relationship. Although McIntosh and Escobar may have ultimately used that private information in "lobbying efforts directed towards administrative agencies," the breach of a professional duty alleged by Reyes occurred irrespective of the later publication of Reyes's confidential information in the report and BIA letter. (See *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, 1189 ["Evidence that confidential information was actually used against the former client in litigation would help support damages, but is not the basis for the claim."].) The trial court therefore erred in finding Reyes's claim for professional negligence arose from McIntosh's protected activity.

The parties make the same arguments as to Reyes's claim against McIntosh for negligence. The elements of a negligence claim are ""a legal duty of care, breach of that duty, and proximate cause resulting in injury."" (*Sabetian v. Exxon Mobil Corporation* (2020) 57 Cal.App.5th 1054, 1070; accord, *Day v. Lupo Vine Street L.P.* (2018) 22 Cal.App.5th 62, 69.) "Recovery in a negligence action depends as a threshold matter on whether the defendant had "'a duty to use due care toward an interest of [the plaintiff's] that enjoys legal protection against unintentional invasion."" (*Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 397; accord, *Sabetian*, at p. 1070.)

The first amended complaint's cause of action for negligence alleges McIntosh breached her duty of care to Reyes "[b]efore the Defendants published and distributed the report" by failing to return or destroy Reyes's records at his request and by instead distributing Reyes's records. Thus, the same conduct underlying the breach alleged in Reyes's claim for professional

24

negligence forms the basis for his claim for negligence: McIntosh's disclosure of private information Reyes provided to her in confidence as his attorney. Accordingly, the trial court also erred in finding Reyes's claim for negligence arose from McIntosh's protected activity.

3. *Reyes's remaining causes of action arose from protected activity*

Unlike Reyes's claims for negligence and professional negligence, McIntosh's alleged violation of her professional duties does not form the basis for Reyes's claims in the first amended complaint for defamation, invasion of privacy, and intentional infliction of emotional distress.[14] Rather, those claims turn on the alleged publication of the report and BIA letter with Reyes's private information, quintessential protected activity.

The elements of defamation are "'"(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'"'" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720; accord, *Murray v. Tran* (2020) 55 Cal.App.5th 10, 37.) Reyes's cause of action for defamation alleges McIntosh and the other defendants published a false communication (the report) on the Internet accusing

---

[14] Reyes has not presented any argument in his opening or reply brief explaining why the trial court erred in its ruling on his claims for unfair business practices and stalking, thereby forfeiting any argument as to those claims. (*Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72 ["'"'Issues not raised in an appellant's brief are [forfeited] or abandoned.'"'"]; *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 555 [same].)

25

Reyes of "fraud[ulently] posing as [an] Indian[]," committing "present day identity theft," and "present[ing] spurious information" to governmental agencies. The first amended complaint alleges further that McIntosh "spread[] false information to journalists," "repost[ed] privacy-protected information online," and wrote "correspondence to California tribes, federal agencies and organizations" including the BIA, Department of the Interior, and the NAHC (the BIA letter).

The elements of a cause of action for intentional infliction of emotional distress are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff has suffered severe or extreme emotional distress; and (3) the defendant's outrageous conduct was the actual and proximate causation of the emotional distress." (*Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1265; accord, *Chang v. Lederman* (2009) 172 Cal.App.4th 67, 86.) The first amended complaint alleges McIntosh's defamatory statements caused Reyes severe emotional distress, including extreme anxiety and post-traumatic stress disorder.

The elements of a cause of action for invasion of privacy by public disclosure of private facts are "(1) public disclosure (2) of a private fact (3) that would be offensive and objectionable to the reasonable person and (4) is not of legitimate public concern." (*Jackson v. Mayweather, supra*, 10 Cal.App.5th at p. 1256; accord, *Taus v. Loftus, supra*, 40 Cal.4th at p. 717.) The first amended complaint alleges McIntosh disseminated Reyes's private information in the report and BIA letter "to the general public through the world wide web without [Reyes's] knowledge or consent."

26

As these allegations illustrate, the three causes of action do not seek to establish McIntosh's liability for violating her professional duty to maintain the confidentiality of Reyes's private information.  Rather, the causes of action turn on publication of the report containing Reyes's private information by posting it on the Internet and distributing it with the BIA letter to governmental agencies.

McIntosh argues publication of the report and BIA letter to officials of the BIA and Department of the Interior and to members of the NAHC is protected activity under section 425.16, subdivision (e)(1), because the communications were written statements made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.

"Communications to an administrative agency designed to prompt action by that agency come within the definition of an official proceeding, even though they '*may precede the initiation of formal proceedings*.'"  (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 475; accord, *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1009.)  The BIA letter and attached report were designed to prompt action by the BIA to "correct[] . . . the data [BIA] offices collected from the 1928 California Indian Judgment Act and subsequent enrollments" and to "reconsider [BIA's] position because [BIA has] the power to right a wrong against authentic California Indians."  Further, the BIA letter sought to highlight a problematic policy of the NAHC of relying on erroneous BIA records.  McIntosh therefore carried her burden to show Reyes's claims based on the publication of the report and BIA letter arose from her protected activity.

27

As to Reyes's claims based on allegations McIntosh and the other defendants published defamatory statements on the Internet (by posting the report), McIntosh argues her conduct is protected under section 425.16, subdivision (e)(3), as written statements made in a public forum in connection with an issue of public interest.  As McIntosh rightly notes, "Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute." (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn.4; accord, *Hupp v. Freedom Communications, Inc.* (2013) 221 Cal.App.4th 398, 404.)  Reyes does not contend the websites on which defendants allegedly posted the report are not public forums under section 425.16, subdivision (e)(3),[15] and thus, whether McIntosh engaged in protected activity turns on whether publication of the report on the KNRM and Ancestry.com websites was in connection with an issue of public interest.

McIntosh contends the report involves the public's interest in the impact of inaccurate BIA records on the rights and benefits of California Native Americans.  Reyes responds that the public interest argued by McIntosh is too broad and amorphous to support her contention.  McIntosh has the better argument.

We apply a two-part analysis to determine whether a defendant's conduct was made "in connection with" a public issue

---

[15]     Even if the communications were not made in a public forum, "section 425.16, subdivision (e)(4) . . . can encompass a private discussion between private individuals" so long as it furthers the debate on a public issue. (*Murray v. Tran* (2020) 55 Cal.App.5th 10, 27; accord, *FilmOn, supra*, 7 Cal.5th at p. 151 [section 425.16, subdivision (e)(4), applies to "public or private speech or conduct"]; *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 897 ["Section 425.16, therefore, governs even private communications, so long as they concern a public issue."].)

or issue of public interest.  "First, we ask what 'public issue or . . . issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech. [Citation.]  Second, we ask what functional relationship exists between the speech and the public conversation about [the] matter of public interest.  It is at the latter stage that context proves useful."  (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149-150 (*FilmOn*).)  "'[I]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate.'"  (*Id.* at p. 150.)  "We are not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction; rather, we examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest."  (*Id.* at p. 151.)

"The public interest requirement . . . must be '"construed broadly" so as to encourage participation by all segments of our society in vigorous public debate related to issues of public interest.'"  (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 23; accord, *Cross v. Cooper* (2011) 197 Cal.App.4th 357, 372.)  "'[M]atters of public interest include legislative and governmental activities . . . .'"  (*MMM Holdings, Inc. v. Reich* (2018) 21 Cal.App.5th 167, 182; accord, *Cross*, at p. 372; cf. *FilmOn, supra*, 7 Cal.5th at pp. 145-146 ["In articulating what constitutes a matter of public interest, courts look to certain specific considerations, such as whether the subject of the speech or activity . . . 'affect[ed] a community in a manner similar to that of a governmental entity.'"].)

The report implicates the policies of at least two governmental entities, the BIA and the NAHC.  As to the former, the report seeks to identify the continuing impact of historical errors in enrollment records, and, as to the latter, the report asserts the Commission's policies "enable[] identity theft by relying on the authority of the [BIA] to determine eligibility for participation in repatriation."  Moreover, the policies of these two agencies "'affect large numbers of people beyond the direct participants'" because the policies affect the rights of the present-day descendants of California Native American tribes.  (*FilmOn, supra*, 7 Cal.5th at p. 145.)  Accordingly, the report implicates issues of public interest.

As to "what functional relationship exists between the speech and the public conversation about [the] matter of public interest," the report purports to identify the specific historical example of the wrongful enrollment of three siblings (one of whom was Reyes's ancestor) on the 1933 California Indian Judgment Roll as proof of a larger problem with historical errors in BIA records pertaining to California Native Americans "to ensure the rights of all California Indian descendants are protected as intended by law."  Therefore, the report "participated in" and "furthered" the "discourse that makes [the] issue one of public interest."  (*FilmOn, supra*, 7 Cal.5th at p. 151; see *Yang v. Tenet Healthcare Inc.* (2020) 48 Cal.App.5th 939, 948 ["speech to the public about a doctor's qualifications furthers the public discourse on that matter"]; *Cross v. Cooper, supra*, 197 Cal.App.4th at p. 375 [defendant's conversation with prospective homebuyer's agent about a registered sex offender living nearby "directly related" to an issue of public interest because it "served th[e] interests" of preventing child abuse and

30

protecting children].)  McIntosh's publication of the report on the KNRM and Ancestry.com websites is therefore protected activity under section 425.16, subdivision (e)(3).[16]

    4.    *Reyes has not demonstrated a probability of prevailing on his causes of action for defamation, invasion of privacy, and intentional infliction of emotional distress*

Reyes has failed to meet his burden on appeal to show the trial court erred in finding he did not show a probability of prevailing on the merits as to his causes of action for defamation, invasion of privacy, and intentional infliction of emotional distress because he does not address the second step of the anti-SLAPP analysis in his opening or reply briefs, and thus he has forfeited any argument on the second step of the analysis. (*Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72; *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 555.)

---

[16]    We reject Reyes's contention McIntosh's conduct was illegal as a matter of law and therefore outside of the anti-SLAPP statute's protections.  This exception to the anti-SLAPP statute's protections applies only when "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320.)  "'[I]llegal'" in this context refers to criminal conduct, not merely violating a rule or statute.  (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654.)  McIntosh does not concede her conduct was criminal, and Reyes failed to present evidence establishing McIntosh's conduct was criminal as a matter of law.

Accordingly, the trial court did not err in granting McIntosh's special motion to strike these causes of action.[17]

[17] Reyes requests we take judicial notice of 10 documents he submitted to the trial court with his request for judicial notice in support of his opposition to Escobar's and McIntosh's special motions to strike, including Escobar's responses to Reyes's discovery requests, the BIA's response to Reyes's request for information, and other governmental communications with Reyes. The court denied Reyes's request because the documents are "reasonably subject to dispute and are not capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." In his request on appeal, Reyes argues only that the documents are relevant. Reyes has not shown the trial court abused its discretion in denying his request, and we therefore also deny his request. (See *CREED-21 v. City of San Diego* (2015) 234 Cal.App.4th 488, 520 ["We apply the abuse of discretion standard in reviewing a trial court's ruling denying a request for judicial notice"].) Reyes also requests we take judicial notice of state and federal court records in other matters, Department of the Interior regulations, American Bar Association Rules of Professional Conduct, sections of the Business and Professions Code, the California State Bar Compendium of Professional Responsibility Index, and emails between McIntosh and Reyes. We deny Reyes's request because the documents are not relevant to our resolution of this appeal. (See *Coyne v. City and County of San Francisco* (2017) 9 Cal.App.5th 1215, 1223, fn. 3 [denying judicial notice as to documents that were not relevant to court's analysis]; *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 482 ["We also may decline to take judicial notice of matters that are not relevant to dispositive issues on appeal."].) Reyes also moves to strike portions of Escobar's appellate briefs for failure to comply with the Rules of Court and inclusion of arguments not made before the trial court, Escobar's respondent's appendix for

## DISPOSITION

The order granting Escobar's special motion to strike under section 425.16 is reversed. The order granting McIntosh's special motion to strike is reversed as to Reyes's causes of action for professional negligence and negligence and affirmed in all other respects. Reyes is entitled to recover his costs as to his appeal of Escobar's special motion to strike. The parties are to bear their own costs on appeal as to McIntosh's special motion to strike.

FEUER, J.

We concur:

SEGAL, Acting P. J.

WISE, J.*

---

inclusion of irrelevant evidence, and McIntosh's appellate brief for referring to facts outside the record. We exercise our discretion to disregard the noncompliance. (See Cal. Rules of Court, rule 8.204(e)(2)(C).))

*  Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.